608 P.2d 317

Paul SANDBLOM and Saundre K. Sandblom, husband and wife; William J. Rappoport and Tula Rappoport, husband and wife, Appellants,

v.

Robert CORBIN, Henry H. Haws, Robert Stark, Joe Lopez and Eldon Rudd, Maricopa County Board of Supervisors; Moise E. Berger, Maricopa County Attorney; Paul E. Blubaum, Maricopa County Sheriff; Raymond A. Johnson, Maricopa County Department of Building Safety; and Camelback Shadows, Inc., an Arizona Corporation, Appellees.

No. 1 CA–CIV 3955.

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 17, 1980.
Rehearing Denied Feb. 26, 1980.
Review Denied March 18, 1980.

McLoone, Theobald & Galbut, P.C. by Philip C. Tower and Lewis & Roca by Jeremy E. Butler, Phoenix, for appellants.

Burch, Cracchiolo, Levie, Guyer & Weyl by Frank Haze Burch, Arda S. Rutherford, and Roush, Mori & Welch by Foster G. Mori, Phoenix, for appellees, Camelback Shadows, Inc.

Cleon M. Duke, Deputy County Atty., Phoenix, for appellees.

Richard B. Zielinski, Asst. County Atty., Phoenix, for appellees other than Camelback Shadows.

## OPINION

WREN, Judge.

This is an appeal from a judgment granted in favor of the defendants in a zoning action.

The facts necessary for resolution of this controversy are as follows: Appellee, Camelback Shadows, Inc. (Camelback Shadows) is the owner of real property which is the subject of this appeal. On March 14, 1972, Camelback Shadows applied for a special use permit, pursuant to Article 24, Section 2401(1)(p), the 1969 Amended Zoning Ordinance for the Unincorporated Areas of Maricopa County (Ordinance), for the purpose of developing a new resort hotel. Accompanying this application were plans and specifications for a resort to be constructed of 97 resort units containing a total of 169,530 square feet, a large commercial-type building of 35,342 square feet, and a recreation building of 5,680 square feet. The application was referred to the Maricopa County Planning and Zoning Commission (Commission) which, after proper notice and public hearings, recommended that the application be denied.[1] Subsequently, the Maricopa County Board of Supervisors (Board) considered the matter in some detail and, after proper notice and public hearings, returned the application to the Commission with the following instructions:

It is hereby resolved, that the application be returned to the Planning and Zoning Commission with instructions to approve a plan of development from the applicant which has no two story units on the perimeters; which does not have lights on tennis courts; and which will reduce the number of square feet for commercial use by the members and guests of the resort to that which can be used by the resort itself, and provide such other stipulations and conditions as the said Commission shall deem reasonable for the protection of the general health and welfare.

Pursuant to the Board's resolution, Camelback Shadows submitted a new or revised application and site master plan (1973 Plan). Under the original plan, 35,542 square feet had been designated as commercial space, of which 18,440 square feet was dedicated to resort shops and services (designated as resort conveniences or leasable area), while the remaining 17,102 square feet consisted of hotel administrative, lobby and restaurant-meeting space (designated as directly related hotel space). The 1973 plan reduced total commercial space to 31,792 square feet, of which 11,050 square feet was dedicated to resort conveniences and the balance of 20,742 square feet was classified as directly related hotel space. In addition to the above changes, the number of resort units was reduced from 97 to 95, all two story units were removed from the perimeter, and the lights were removed from the tennis courts. On February 15, 1973, the Commission adopted a resolution recommending approval of the 1973 Plan. Thereafter, on February 26, 1973, the Board adopted the following resolution granting the special use permit:

WHEREAS, on December 18, 1972, the Board of Supervisors of Maricopa County, Arizona, adopted a resolution remanding Zoning Case Z–72–44 back to the Planning and Zoning Commission with instructions to approve a plan of development for the applicant which has no two-story units on the perimeter; which does not have lights on the tennis courts; and which will reduce the number of square

---

1. Article 24, Section 2401(2), (3), of the Ordinance:

2) Before permitting any of the above uses, plans together with a supporting statement as to the proposed use of the buildings, structures and premises shall be submitted to the Board of Supervisors. These plans and supporting statement shall be referred to the Commission for its review, report and recommendation and for public hearing. Notice and procedure for public hearing shall conform to the procedures prescribed in Article XXVIII hereof.

3) The Commission having held public hearing shall then present its report and recommendation and the plans, together with the supporting statement to the Board of Supervisors for consideration and public hearing. Notice and procedure for public hearing shall conform to the procedures prescribed in Article XXVIII hereof.

feet for commercial use by the members and guests of the resort, to that which can be used by the resort itself; and which provides such other stipulations and conditions as the said Commission shall deem reasonable for the protection of the general health and welfare; and WHEREAS, the applicant has submitted revised plans which eliminate all two-story units on the perimeter, no lights will be permitted for the tennis courts; reduce the leasable space for shops and services oriented to the desires and needs of the guests pursuant to the Board of Supervisors' resolution of December 18, 1972; and

WHEREAS, the Planning and Zoning Commission has recommended that the Board approve the application subject to certain conditions;

NOW, THEREFORE, BE IT RE-SOLVED that this Board approve the application subject to the following conditions:

(1) Conformance with a "Site Master Plan" drawn to scale one inch equals 40 feet by Schwenn and Clark Architects, Inc., dated revised January 19, 1973 which shows proposed walls located behind the 55-foot half-width right-of-way of Lincoln Drive; subject to assurance satisfactory to the County Engineer to guaranty that off-site improvements will be made in accordance with the "Site Master Plan" prior to issuance of any building permits; conformance with site grading and drainage plans and revisions thereto that may be required by the Maricopa County Flood Control District; provided that landscape architectural plans be submitted subject to Commission action and approval before any building permits are issued; and

(2) Dedication of a 55-foot half-width right-of-way for Lincoln Drive before building permits are issued; and

(3) Submittal of a master site plan with each building identified by key numbers for purposes of identification at such time as building permits are requested; and

(4) Submittal of a grading and drainage plan that has been reviewed and stamped approved by the County Flood Control Engineer before building permits are issued.

No work was done on the site from 1973 to 1975. Then, by letter dated January 31, 1975, Camelback Shadows requested that the Board substitute a revised site master plan (1975 Plan) with the same conditions as previously imposed. The 1975 Plan proposed changes pertaining almost exclusively to the main core commercial area of the resort complex. While there was some slight movement of some of the locations of the residential units and directional reorientation, their location, size and shape remained essentially the same. The plan also proposed to change the architectural style of the complex from what the trial court described as a "nondescript Orange County style to a distinctive Colonial Mission style." A comparison of the 1973 and 1975 plans shows that the core area of the complex remained in the identical spot with the same directional orientation. The gross building area square footage under all classifications also remained the same. However, certain space allocations, which had been previously categorized in the sub-commercial class of resort conveniences, were transferred to the sub-commercial class of directly related hotel space. The 1975 plan also eliminated certain space allocations from the commercial category and introduced new resort conveniences, including a branch bank.

On February 3, 1975, the Board, upon public hearing, but without notice or prior submission to the Commission, approved and adopted the 1975 revised site master plan. The record of that hearing clearly shows that the Board believed that the 1975 plan was a significant improvement over the prior plan, and was satisfied that it met all the previously defined requirements. On July 27, 1976, appellants who were surrounding property owners, filed their action. The thrust of their complaint was that the development of the resort was proceeding under an *invalidly amended* special use permit.

Appellants, in their complaint, sought the following relief: (1) a declaratory order establishing the rights and legal relations of the parties; (2) an injunction against Camelback Shadows to halt construction and remove all structures in violation of the Ordinance; and (3) an injunction against the named county defendants, ordering them to take whatever action was necessary to halt construction and oversee the removal of all structures in violation of the Ordinance.

On February 25, 1977, the Superior Court of Maricopa County, the Honorable Stanley Z. Goodfarb presiding, presented its extensive findings of fact and conclusions of law, and ordered that judgment be entered in favor of the defendants upon plaintiffs' complaint.

Subsequent to the filing of the notice of appeal, the Town of Paradise Valley annexed the appellees' (Camelback Shadows) property, and issued its own special use permit. Thereafter, appellees filed a motion to dismiss the appeal as moot, arguing that even if the appellants were granted the relief sought, it would have no effect on any of the parties because Maricopa County no longer had jurisdiction over the subject property. We denied appellees' motion with leave to re-argue the issue in their briefs. Pursuant to that order, appellees again raise the issue of mootness.

 Upon reconsideration we conclude that the case against the Maricopa County defendants is moot and their dismissal from this appeal is appropriate. In our opinion, a case becomes moot when an event occurs, pending an appeal, which renders the relief sought either impossible or without practical effect on the parties to the action. *See Hawes v. Cooper*, 14 Ariz.App. 88, 480 P.2d 1005 (1971); *Lord v. City of Tucson*, 10 Ariz.App. 54, 455 P.2d 1004 (1969); and *Card v. Flegel*, 26 Or.App. 783, 554 P.2d 596 (1976).

In the context of the present controversy, even if we were to decide that the appel-

lants were entitled to the relief they had requested in the trial court such a decision would be without practical effect because Maricopa County officials could not be required to take any action with respect to property which was no longer within the County's jurisdiction.

 However, we are of the opinion that appellants' case against Camelback Shadows has not been made entirely moot by virtue of the annexation. While we recognize that the question of injunctive relief for violation of the Ordinance is no longer at issue, declaratory relief can still issue independently of a request or grant of other special relief. *Podol v. Jacobs*, 65 Ariz. 50, 173 P.2d 758 (1946). Since the validity of the Paradise Valley Special Use permit could be affected by a decision on the substantive issues, and because we are aware that we may be confronted by this same issue again, we believe that the parties are entitled to a final determination of the present controversy.

We point out that this appeal is not concerned with the validity of the Ordinance or the Special Use permit issued in 1973. Rather, the primary issue for our consideration concerns the validity of the action taken by the Board in 1975, and particularly, whether the 1973 Special Use Permit was *amended*, pursuant to Article 24, Section 2401(7) [2] as a result of the Board's approval of the 1975 substitute site master plan.

 The cardinal rule of statutory construction is to ascertain and give effect to the intent of the lawmaking body, *City of Mesa v. Killingsworth*, 96 Ariz. 290, 394 P.2d 410 (1964); *Phoenix Title & Trust Company v. Burns*, 96 Ariz. 332, 395 P.2d 532 (1964), and such construction is ordinarily a question of law. *Arizona State Board of Accountancy v. Keebler*, 115 Ariz. 239, 564 P.2d 928 (App.1977). In determining such intent the court will take into consideration the natural meaning of the words and construe such language in the context

2. Article 24, Section 2401(7):
"Amendments shall be processed in the same manner as the initial plans and supporting

statement of proposed use." (Note—*Amendments is UNDEFINED.*)

of the entire Ordinance, so that all parts thereof may be given their intended effect and the ordinance may be construed as a harmonious whole. *Phoenix Title & Trust Company v. Burns.* Furthermore, "where the language of a statute is susceptible of more than one interpretation the court must adopt the interpretation which is reasonable." *Hart v. Arganese*, 82 Ariz. 380, 384, 313 P.2d 756, 758 (1957).

Appellants claim that principles of statutory construction are unnecessary in light of appellees' alleged admissions, that the 1973 Special Use permit was amended.[3] They assert that these alleged admissions, if not conclusive of the issue, could not be any clearer or more convincing proof that the Board's action in 1975 constituted an *amendment* of the permit. This same argument was presented to and rejected by the trial court, which dismissed the statements as involving an unfortunate problem of semantics. We agree that these statements are not conclusive of the issue. Since the issue involves a question of law, or at least, a mixed question of law and fact, the court has the ultimate responsibility to resolve such matters.

Appellants contend that when a special use permit is issued subject to conformance with specified conditions, as was the 1973 permit, that the conditions form an integral part of the permit. Consequently, any subsequent effort to change or modify the conditions constitutes an attempt to amend the permit, which means that the proposal must follow the same procedural formalities as the original permit application. Appellants argue that the 1975 plan effected such a change in the previously imposed conditions by permitting changes in the property's use

and the buildings to be constructed thereon, so that when the Board approved the 1975 plan, the permit was amended. It is further asserted that since the procedural prerequisites of public notice and hearings were not followed prior to the Board's approval, the alleged amendment was without force or effect under settled case law, and consequently any construction or development in conflict with the 1973 Special Use permit was in violation of the Ordinance. *Hart v. Bayless Investment & Trading Company*, 86 Ariz. 379, 346 P.2d 1101 (1959); *Summit Properties, Inc. v. Wilson*, 26 Ariz. App. 550, 550 P.2d 104 (1976).

Camelback Shadows, on the other hand, characterizes the controversy as concerning whether the word *amendments* refers to a proposed change in special use, or also includes any and all proposed changes in a previously approved site master plan.

■ After a comprehensive review of the authorities and case law in this area, we are of the opinion that appellees' general approach is more consistent with the purposes of the Ordinance and best reflects the legislature's intent in enacting Article 24.

In addressing this issue, the trial court apparently interpreted the term *amendments* as referring either to a proposed change in general (special) use, or to a substantial or material change within the defined parameters of the permit. We agree with the trial court's interpretation because of the interrelationship of several specific factors. First, there is no better way of ascertaining the legislature's intent than by reviewing their actions in light of their own legislative creations. In the instant case, it is clear, that the Board be-

3. In Maricopa County's *Answer* to plaintiffs' amended complaint, the county made the following statement:

"Admit that defendant Camelback Shadows, Inc., is proceeding with construction and development of said resort pursuant to said *amended special use permit* and properly issued building permits." (Emphasis supplied.)

In an attempt to further protect their development activities, Camelback Shadows filed an application for a new Special Use permit in

1976 (Zoning Case Z–76–77). In its application, Camelback Shadows made the following statement:

"It was the opinion of all concerned at the time that no material changes were proposed and that therefore the *special use permit could be amended as an administrative procedure,* which was done in 1975. . . . On the basis of the amended *special use permit,* the owner obtained building permits and began grading and building on the site in mid-1975." (emphasis supplied.)

lieved it could administratively approve changes in a site plan without having to comply with the mandate of Section 2401(7). We also note that Section 2401(7) fails to refer to anything other than the general subject matter of the Article, which leads us to believe that its meaning should be taken from the entire context of the Article and the Ordinance. Furthermore, we are cognizant of the conceptual basis for special use procedures. Special Use permits have been described as arising in response to a need for *flexibility* in the administration of zoning laws. *3 R. Anderson, American Law of Zoning, 2d* § 19.01. These permits are issued pursuant to the literal language of the ordinance, and do not, in any sense, create a new zone, or constitute an alteration or amendment of existing zoning regulations. *Essick v. City of Los Angeles,* 34 Cal.2d 614, 213 P.2d 492 (1950); *Durocher v. King County,* 80 Wash.2d 139, 492 P.2d 547 (1972). If we adopted appellants' position, the goal of flexibility would be replaced by an unrealistically rigid system of review which would require a continuing series of dual hearings each time a change or modification was sought in a previously approved site master plan. Such extreme control is simply inconsistent with the philosophy which gave rise to these procedures.

Finally, we believe that the Board's administrative action in 1975 was not violative of the general principles of notice and hearing. Notice and hearing requirements are founded upon constitutional requirements of procedural due process. *Hart v. Bayless Investment & Trading Company.* The purpose of these requirements is to reasonably apprise the public of the action to be taken and allow it an opportunity to be heard. *Hart v. Bayless Investment & Trading Company.* "If this opportunity is given as required by law . . . then it is of no moment that the Commission or the Board might indulge in further deliberations for a reasonable time before proceeding to the formal adoption of an ordinance." *Hart v. Bayless Investment & Trading Company,* 86 Ariz. at 389, 346 P.2d at 1109. In light of the above principles, the general rule is that, once notice and hearings have

been had pursuant to constitutional and statutory standards, the zoning authority may request and receive additional information and materials before rendering their final decision, and may make subsequent changes after notice and hearing when the alterations are not substantially different in character and are foreseeably within the general scope of the initial notice and hearing(s). *Summit Properties, Inc. v. Wilson; Hart v. Bayless Investment & Trading Company.*

The Arizona case authorities which have been cited to this Court deal exclusively with the enactment of zoning ordinances and amendments thereto, while the present controversy involves the modification of a validly issued special use permit. In our opinion, there is a sufficient distinction between the two to effect the kind of action the Board may take without prior notice and hearing.

When a Board of Supervisors enacts a zoning ordinance or amendment thereto, it acts in a legislative capacity. *Summit Properties, Inc. v. Wilson.* Since such action finds its authority through the police power, which comes by way of delegation from the state, it is axiomatic that, in the passage of zoning regulations, the Board scrupulously adhere to the state statutes which delegate that power. *Hart v. Bayless Investment & Trading Company.* An important consideration in demanding strict compliance is the fact that zoning ordinances act in derogation of common law property rights by prescribing the use to which land may be put. As a result, it is a principle of law that property owners are entitled to notice and hearing before the passage of a zoning ordinance which would limit the use of their property. *Wood v. Town of Avondale,* 72 Ariz. 217, 232 P.2d 963 (1951).

On the other hand, the issuance of a special use permit is generally recognized as an administrative act, *Essick v. City of Los Angeles; Durocher v. King County;* *3 R. Anderson, American Law of Zoning, 2d,* § 19.10, because, even though the permit

may authorize a change in the property's use, such use is already sanctioned by the provisions of the existing ordinance upon approval of the proper administrative authorities. *Durocher v. King County, 3 R. Anderson, American Law of Zoning, 2d,* § 19.04. As a result, the public is not affected to as great a degree by the issuance of these permits as they would be in cases of changes in zoning, because they are already on notice that these special uses are permissible by administrative decree. Our conclusion is particularly relevant under the facts of this case because appellants not only own or live on property in an area containing numerous resort hotels but, the appellees' property was already being operated as a resort hotel, under a non-conforming use status, at the time the original application was filed in 1972. Such status entitled appellees to expand the resort up to approximately 70 resort units. We also note that the same site had received prior zoning approval for the construction of a restaurant. Based upon the above circumstances, we find that appellants' rights or expectations were not materially affected, either by the issuance of the permit or by the subsequent modifications by the Board.

In our opinion, the *administrative* action here involved does not entitle the public to any greater procedural protection, than is afforded when the Board acts in a legislative capacity. Therefore, we believe that the Board may effect insubstantial changes in a permit if they fall within the general purview of the original notice without having to resort to a new round of noticed hearings before the Commission and the Board. *Summit Properties, Inc. v. Wilson; Nesbit v. City of Albuquerque,* 91 N.M. 455, 575 P.2d 1340 (1977).

Appellants would have us limit the above rationale to cases in which the modifications occur *prior to* the final approval of the Board, on the basis that once the Board has issued its final approval it is without further jurisdiction to effect any changes without resort to new notice and hearings before the Commission and the Board.

Arizona law is clear that "official acts of public officers are presumed to be correct and legal, in the absence of clear and convincing evidence to the contrary." *Burri v. Campbell,* 102 Ariz. 541, 543, 434 P.2d 627, 629 (1967). However, when factual evidence is presented which rebuts that presumption, the courts will inquire whether the public officers, in fact, had jurisdiction to act. We have reviewed the trial record on the above issue and find that appellants have failed to sustain their burden. Furthermore, we find that the authorities cited by appellants on the issue of lack of jurisdiction are not persuasive. Consequently, we hold that insubstantial modifications are permissible without the necessity of further notice and hearings whether the insubstantial modifications occur before or after the issuance of the permit. We believe our position in favor of continuing administrative control is not only consistent with the need for flexibility in the administration of zoning regulations, but was also expressly recognized by the Board, in its resolution, inasmuch as it required the submission of additional plans before the building permits could be issued.

In light of the foregoing principles, the remaining issue is whether the trial court erred, as a matter of law, in finding that the 1975 plan failed to incorporate any significant or substantial changes.

It is a settled principle of law that the reviewing court must view the evidence in the light most favorable to sustaining the judgment of the trier of fact, and the judgment will not be disturbed if there is evidence to support it. *Guirey, Srnka & Arnold, Architects v. City of Phoenix,* 9 Ariz. App. 70, 449 P.2d 306 (1969); *Fought v. Fought,* 94 Ariz. 187, 382 P.2d 667 (1963).

After an exhaustive review of the record, and noting the trial court's extensive efforts to see that justice was done, we find that there was sufficient evidence to sustain the trial court's ultimate findings of fact.

Therefore, based upon the foregoing rationale, we are of the opinion that the judgment must be affirmed.

DONOFRIO, Acting P. J., and CONTRERAS, J., concur.