148 P.3d 1155

**COCONINO COUNTY, Arizona, a political subdivision of the State of Arizona, Plaintiff–Counterdefendant–Appellant–Cross–Appellee,**

v.

**ANTCO, INC., an Arizona corporation dba Eden Organics, Defendant–Counterclaimant–Appellee–Cross–Appellant,**

**Richard Twidwell and Chris Twidwell, Defendants–Appellees.**

No. 1 CA–CV 05–0674.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 19, 2006.

Terry Hance, Coconino County Attorney, by Timothy G. McNeel, Deputy County Attorney, Flagstaff, Attorneys for Appellant Coconino County.

Thaddeus G. Baker, Jr., Flagstaff, Attorney for Appellees.

## OPINION

WEISBERG, Judge.

¶ 1 Coconino County appeals from the trial court's dismissal of its complaint against Antco, Inc. and its owners, Richard and Chris Twidwell (collectively, "Antco"). The dismissal was premised on the doctrine of primary jurisdiction. Antco cross-appeals, requesting that we vacate the trial court's dismissal of its counterclaim for declaratory relief. For the reasons set forth below, we reverse both dismissals.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The Twidwells are the sole shareholders, directors, and officers of Antco Inc., an Arizona corporation. They also own twenty acres of land in Coconino County, Arizona, five acres of which they lease to Eden Organics, a dba of Antco, for the composting of domestic septage and grease. Between January 1998 and September 2001, Eden Organics ran a commercial fertilizer operation for the production and sale of composted materi-

als to the public. Its operation involved the open air composting of domestic septage and restaurant grease, and was conducted pursuant to a conditional use permit issued by the Coconino County Planning and Zoning Commission (the "Commission"). The Arizona Department of Environmental Quality ("ADEQ") inspected the site several times, partly in response to complaints filed by Coconino County, but did not find any violations. In September 2001, however, the Commission determined that Antco was not in compliance with the conditional use permit and ordered it to apply for a modified use permit.[1]

¶ 3 With its composting business under scrutiny by Coconino County, Antco attempted to qualify for newly-amended statutory protections available to agricultural composting operations. *See* A.R.S. §§ 11–830(A)(3) (2001) (restricting, under certain conditions, local regulation of "use or occupation of land or improvements for agricultural composting"), 3–112(B) (2002) (presumption that lawful agricultural operations do not adversely affect public health and safety). Accordingly, Antco notified the Coconino County Board of Supervisors and the Summit Fire Department that, as of September 1, 2001, it had changed its operations from commercial composting to agricultural composting.

¶ 4 On April 5, 2002, Coconino County filed a complaint and motion for temporary restraining order against Antco, alleging that Antco's "open dumping and use of septage and restaurant grease" violated various ADEQ regulations and therefore constituted a "per se public health nuisance" and a "public health, safety and welfare hazard." On August 27, 2002, Antco filed an answer and a counterclaim for declaratory judgment, seeking a judicial declaration that, *inter alia*, its activities qualified as "agricultural composting," and that A.R.S. § 11–830(A)(3) precluded Coconino County from "regulating the use or occupation of land" for that purpose.

¶ 5 The parties subsequently filed cross-motions for summary judgment. Antco's motion for partial summary judgment requested among other things that, pursuant to the doctrine of primary jurisdiction, the trial court "abstain from taking any action ... and dismiss the complaint until [Coconino] County has gone through [ADEQ's] administrative process." Relying on the doctrine of primary jurisdiction, the trial court granted Antco's motion for partial summary judgment by dismissing Coconino County's complaint without prejudice in deference to ADEQ "for an initial decision" on the matter. The trial court, however, did not establish a timeframe for ADEQ action or identify the precise issues that it expected ADEQ to resolve. In light of its order dismissing the complaint, the trial court declined to rule on any other issue, including Antco's counterclaim and dismissed the entire case without prejudice. Coconino County filed a timely appeal, and Antco filed a timely cross-appeal. *See* ARCAP 9(a). We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## STANDARD OF REVIEW

¶ 6 We will not overturn a trial court's order dismissing a complaint absent an abuse of discretion. *Keenen v. Biles*, 199 Ariz. 266, 267, ¶ 4, 17 P.3d 111, 112 (App. 2001); *see also Campbell v. Mt. States Tel. & Tel., Co.*, 120 Ariz. 426, 427–28, 586 P.2d 987, 988–89 (App.1978) (reviewing dismissal without prejudice based on the doctrine of primary jurisdiction). An abuse of discretion exists when the court commits an error of law in reaching a discretionary conclusion that is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Torres for and on Behalf of Torres v. N. Am. Van Lines, Inc.*, 135 Ariz. 35, 40, 658 P.2d 835, 840 (App.1983).

## DISCUSSION

¶ 7 Our analysis will include the three legal doctrines that, given the cases cited by the

---

1. Because the conditional use permit subsequently expired on its own terms, it is not necessary to detail the various facts related to it. It is worth noting, however, that in 2001, ADEQ and the Coconino County Health Department entered into a delegation agreement. *See* Ariz.Rev.Stat. ("A.R.S.") section 49–107 (2005) (authorizing such agreements). The agreement provided that "[n]othing herein shall preclude [Coconino County] from independently initiating enforcement action pursuant to its own authority under A.R.S. [§§ 36–602 (2003),–603 (2003), 49–143 (2005),–144 (2005)] or any other civil or criminal statute or local ordinance."

parties, might have influenced the trial court's decision: exhaustion of remedies, primary jurisdiction, and preemption. Because these doctrines are frequently confused and sometimes overlap in their application, we discuss each of them separately.

### Exhaustion of Remedies[2]

■ ¶ 8 When a statute grants an administrative agency original jurisdiction over a dispute, the exhaustion of remedies doctrine compels the parties to avail themselves of all available administrative processes before seeking the aid of a court. *See Campbell,* 120 Ariz. at 429, 586 P.2d at 990; *Moulton v. Napolitano,* 205 Ariz. 506, 511, ¶ 10, 73 P.3d 637, 642 (App.2003) (citation omitted); *U.S. v. W. Pac. R.R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) (exhaustion of remedies doctrine applies "where a claim is cognizable in the first instance by an administrative agency alone"). The exhaustion of remedies doctrine determines the point at which a court may properly review an administrative action. *Campbell,* 120 Ariz. at 429, 586 P.2d at 990; *Moulton,* 205 Ariz. at 511, ¶ 9, 73 P.3d at 642. The doctrine does not apply, however, when the administrative remedy prescribed by statute is merely permissive, when the jurisdiction of the agency is being contested, when the agency's expertise is unnecessary, or when exhausting administrative remedies would cause irreparable harm or be futile. *Moulton,* 205 Ariz. at 512–13, ¶ 18, 73 P.3d at 643–44.

■ ¶ 9 The purpose of the exhaustion of remedies doctrine is "to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Id.* at 511, ¶ 9, 73 P.3d at 642 (citation omitted). In this way, the exhaustion of remedies doctrine promotes judicial economy as well as administrative agency autonomy, preventing "premature judicial intervention in inchoate administrative proceedings." *Id.*

¶ 10 In *Southwest Soil Remediation, Inc. v. City of Tucson,* for example, we concluded that the exhaustion of remedies doctrine precluded a soil recycling company from filing suit to overturn the decision of a city zoning administrator because it had not first appealed to the city's board of adjustment as required by statute. 201 Ariz. 438, 442, ¶ 16, 36 P.3d 1208, 1212 (App.2001); *see* A.R.S. § 9–462.06 (1996). On the other hand, in *Bentivegna v. Powers Steel & Wire Products, Inc.,* we held that the exhaustion of remedies doctrine did not preclude a lawsuit against a construction company for alleged defects. 206 Ariz. 581, 585, ¶ 13–14, 81 P.3d 1040, 1044 (App.2003). We held that the trial court could address the merits of the action even though the owners did not appeal a corrective order issued by the Arizona State Registrar of Contractors because that administrative procedure was merely permissive and therefore did not trigger the exhaustion of remedies doctrine. *Id.*

■ ¶ 11 In the instant case, the exhaustion of remedies doctrine is clearly inapplicable. No administrative action was pending with respect to Antco at the time the trial court dismissed Coconino County's complaint. Indeed, the record reflects that Coconino County filed its complaint at least in part because ADEQ had failed to act as Coconino County had requested. Although the trial court's dismissal of its complaint did not prevent Coconino County from filing further complaints with ADEQ, *see* A.R.S. § 41–1010 (2004), such complaints could not compel action by ADEQ and would likely have been futile in light of the results of ADEQ's previous investigations, which found no existing violations of its environmental regulations. *See* A.R.S. §§ 49–141(A) (2005) (ADEQ director has discretion to act where there is "reasonable cause to believe from information furnished to the director or from the director's own investigation that a person is maintaining an environmental nuisance"),–287.01(A) (2005) (director may conduct preliminary investigation),–781(A) (2005) (if director determines that a person is creating

---

2. Although Antco never argued that the exhaustion of remedies doctrine applied under the facts at issue here, the doctrine provided the basis for the outcome in several of the cases upon which Antco relied. *See, e.g., Campbell,* 120 Ariz. at 429, 586 P.2d at 990. Therefore, a brief discussion of this doctrine is appropriate.

an imminent and substantial endangerment to the public health or the environment, he may issue an order requiring immediate compliance).

¶ 12 Moreover, in the 2001 delegation agreement between ADEQ and Coconino County, ADEQ specifically acknowledged Coconino County's statutory right to initiate related enforcement actions independently.[3] Consequently, the exhaustion of remedies doctrine could not have prevented Coconino County from pursuing its complaint against Antco.

### Primary Jurisdiction

■ ¶ 13 Antco did not directly argue below that Coconino County was without statutory power to act or that the exhaustion of remedies doctrine prevented Coconino County from pursuing its action with the court. Rather, Antco argued that Coconino County's authority to act had been preempted by the state in light of various state statutes concerning composting. The trial court did not rule upon the preemption argument. Antco also argued, and the trial court agreed, that the doctrine of primary jurisdiction required that the court defer the matter to ADEQ. We, however, disagree with that conclusion.

■ ¶ 14 In contrast to the exhaustion of remedies doctrine, the doctrine of primary jurisdiction is a deferential doctrine that applies when a court and an administrative agency have concurrent jurisdiction over an issue. *See, e.g., Campbell,* 120 Ariz. at 429–30, 586 P.2d at 990–91. Although the court has the power to consider the matter, the doctrine of primary jurisdiction provides that it defer its initial consideration of the disputed issue to the agency when such initial consideration is contemplated by the legislature and particularly when the agency has specialized expertise in the subject matter. *Id.*

■ ¶ 15 When appropriately applied, the doctrine of primary jurisdiction ensures the "[u]niformity and consistency in the regulation of business entrusted to a particular

agency" by the legislature, provides for the rational exercise of "the limited functions of review by the judiciary," and promotes the "orderly and sensible coordination of the work of agencies and of courts." *Id.* at 430, 586 P.2d at 991 (citations omitted). As such goals reflect, the doctrine of primary jurisdiction is based on the constitutional mandate of the separation of governmental powers even though it is not a principle of jurisdictional power but "a discretionary rule created by the courts to effectuate the efficient handling of cases in specialized areas where agency expertise may be useful." *Original Apartment Movers, Inc. v. Waddell,* 179 Ariz. 419, 421, 880 P.2d 639, 641 (App.1993); *see* Ariz. Const. art. 3 ("The powers of the government of the State of Arizona shall be divided into three separate departments ... and no one of such departments shall exercise the powers properly belonging to either of the others."); *J.W. Hancock Enter., Inc. v. Ariz. State Registrar of Contractors,* 142 Ariz. 400, 405, 690 P.2d 119, 124 (App.1984) (potential violation of separation of powers where there is "significant interference by one department with the operations of another department").

■ ¶ 16 Because the doctrine of primary jurisdiction derives from the constitutional mandate of the separation of powers, it applies when an initial decision by the judiciary could interfere with the effective operation of an agency established by a co-equal branch of government, such as when an administrative review of the matter has already begun. *See, e.g., Original Apartment Movers, Inc.,* 179 Ariz. at 422, 880 P.2d at 642; *W. Pac. R.R. Co.,* 352 U.S. at 63, 77 S.Ct. 161 (noting that the doctrine of primary jurisdiction is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties"). However, the doctrine is not designed to coordinate the actions of two *different levels* of government, especially when their respective authority over the subject matter has not been established. *Cf. J.W. Hancock Enter., Inc.,* 142 Ariz. at 408, 690 P.2d at 127 (noting that the doctrine of pri-

---

**3.** We also note that Coconino County has alleged that irreparable environmental harm would result from Antco's continued operations if Coconino County were forced to wait for ADEQ to act.

mary jurisdiction "is a *judicial* device by which the power to make initial determinations is allocated between *courts* and *agencies*") (emphasis added); Louis L. Jaffe, *Primary Jurisdiction*, 77 Harv. L.Rev. 1037 (1964) (the doctrine of primary jurisdiction "may be seen as an attempt to resolve the procedural and substantive conflicts inevitably created when there is carved out for an agency an area of original jurisdiction which impinges on the congeries of original jurisdictions of the courts").

¶ 17 *Original Apartment Movers, Inc.*, for example, involved a taxpayer who filed a lawsuit challenging his tax liability while the Arizona Department of Revenue, the state agency entrusted by statute with determining tax liability, was conducting a related audit. 179 Ariz. at 421, 880 P.2d at 641. We held that the doctrine of primary jurisdiction required that the tax court defer the "first examination" into whether the taxpayer owed taxes to the Arizona Department of Revenue. *Id.* We noted that permitting the tax court to conduct an initial examination into the case despite the pending administrative proceedings "would allow any person to avoid an audit and send the question to the tax court by simply alleging that one is somehow exempt from taxation." *Id.* at 422, 880 P.2d at 642.

¶ 18 However, Antco has failed to cite, and we have not found, any case in which a local government has been prevented from exercising its public health enforcement powers by the operation of the doctrine of primary jurisdiction. *See* A.R.S. § 36–183.02(A) (2003) ("Each county shall investigate all nuisances, sources of filth and causes of sickness and make regulations necessary for the public health and safety of the inhabitants."). We decline to apply the doctrine to such effect here, especially since the key precedent upon which Antco relies, *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952), is inapposite.

¶ 19 In *Far East Conference*, the U.S. Department of Justice sought to enjoin alleged violations of the Sherman Anti–Trust Act. *Id.* at 573, 72 S.Ct. 492. The Far East Conference, a voluntary association of steamship companies, operated under an agreement that had been approved by a federal administrative board established to oversee international shipping under the Shipping Act. *Id.* at 572, 72 S.Ct. 492. Although the agreement, which authorized a dual system of rates, was approved by the administrative board, the specific rates had not been directly submitted to the board. *Id.* at 572, n. 4, 72 S.Ct. 492. The defendants moved for the dismissal of the action, noting that the government had not first filed a complaint with the board although it was entitled to do so. *Id.* The district court refused to defer the action to the board, relying on its jurisdiction to decide the matter under the anti-trust act. *Id.* at 571, n. 1, 72 S.Ct. 492.

¶ 20 The United States Supreme Court reversed, citing its previous decisions that detailed the purpose, scope, and limits of the Shipping Act. *Id.* at 573–74, 72 S.Ct. 492; *see also Fed. Mar. Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 503–13, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958) (Frankfurter, J., dissenting) (history of the Shipping Act). The Court explained that the crux of the government's action, the allegedly illegal dual-rate system, implicated "questions of an exceptional character, the solution of which may call for the exercise of a high degree of expert and technical knowledge," which were "generally unfamiliar to a judicial tribunal, but well understood by an administrative body especially trained and experienced in the intricate and technical facts and usages of the shipping trade, and with which that body, consequently, is better able to deal." *Far East Conference*, 342 U.S. at 573–74, 72 S.Ct. 492 (citing *U.S. Navigation Co. v. Cunard S.S. Co.*, 284 U.S. 474, 485, 52 S.Ct. 247, 76 L.Ed. 408 (1932)). The Court also noted that the issues raised in the government's complaint were "within the exclusive preliminary jurisdiction" of the board. *Id.* at 574, 72 S.Ct. 492. In light of such facts and the government's failure to first pursue its action with the administrative board, the Court held that the doctrine of primary jurisdiction required the trial court to defer the matter to the board for an initial decision. The Court stated that

in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administra-

tive discretion, agencies created by Congress for regulating the subject matter should not be *passed over.* This is so even though the facts *after they have been appraised by specialized competence* serve as a premise for legal consequences to be judicially defined.

*Id.* (emphasis added). The Court further explained that the federal government, like a private party, was subject to the doctrine of primary jurisdiction under the circumstances of the case because "[t]he same Anti–Trust Laws and the same Shipping Act apply to the same dual-rate system. To the same extent they define the appropriate orbits of action as between *court* and *Maritime Board.*" *Id.* at 576, 72 S.Ct. 492 (emphasis added).

¶ 21 However, the United States Supreme Court and other courts have explained that the doctrine of primary jurisdiction does not apply if the administrative agency has already acted or otherwise been given an opportunity to determine matters within its special expertise or explicit jurisdiction prior to judicial review. *See, e.g., W. Pac. R.R. Co.,* 352 U.S. at 69, 77 S.Ct. 161 ("Certainly there would be no need to refer the matter ... to the Commission if that body, in prior releases or opinions, has already construed the particular tariff at issue or has clarified the factors underlying it."); *McKart v. U.S.,* 395 U.S. 185, 194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) ("The courts ordinarily should not interfere with an agency *until it has completed its action,* or else has clearly exceeded its jurisdiction.") (emphasis added); *Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (doctrine of primary jurisdiction requires a court to enable a "referral" to the agency "staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling"); *Brown v. MCI WorldCom Network Serv., Inc.,* 277 F.3d 1166, 1172 (9th Cir.2002) (noting that doctrine of primary jurisdiction is not intended to " 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit" but is "properly invoked when a claim ... requires resolution of an issue of *first impression,* or of a particularly complicated issue that Congress has committed to a regulatory agen-

cy") (emphasis added); *Ellis v. Tribune Television Co.,* 443 F.3d 71, 81 (2nd Cir.2006) (explaining that the doctrine of primary jurisdiction's "central aim is to allocate *initial* decision making responsibility between courts and agencies and to ensure that they 'do not work at cross-purposes' ") (citation omitted) (emphasis added); *see also,* Jaffe, *Primary Jurisdiction,* 77 Harv. L.Rev. at 1070 (noting that the doctrine of primary jurisdiction should not encumber a court's jurisdiction by requiring a further proceeding "before an agency which up to that time has not seen fit to exercise jurisdiction").

¶ 22 Here, ADEQ was given ample opportunity to initially determine the underlying facts and circumstances of this case, but apparently exercised its discretion not to act against Antco. ADEQ inspected the site twice in 1999, but did not find a violation. In June 2001, Coconino County filed a complaint with ADEQ alleging that Antco's operations constituted an environmental nuisance. ADEQ again inspected the site and again found no violation. Subsequently, in a letter to Antco dated May 20, 2004, ADEQ's water quality division director detailed the "interface and applicability" of various ADEQ regulations governing the land application and disposal of biosolids and human excreta. The division director also explained a local county health department's authority over such regulations and noted that "[o]f course, a local ordinance may govern the activity and local authorities should be consulted about the existence of any applicable local ordinance."

¶ 23 Given Coconino County's putative authority to act in its own right, Coconino County's initial resort to ADEQ, ADEQ's decision not to act, and ADEQ's letter to Antco, the reasons behind the doctrine of primary jurisdiction—the promotion of uniformity between courts and agencies and the input of an agency's special expertise—would not be served by its application here. A trial court may not use the doctrine of primary jurisdiction to prevent a local government from taking actions that are arguably within its power, and certainly not after the appropriate administrative agency has had an opportunity to determine the matter or other-

wise provide the court with the benefit of its expertise.[4] Rather, as discussed next, the germane issue here is preemption.

### Preemption

¶ 24 Unlike the doctrine of primary jurisdiction, which encourages the coordination between courts and administrative agencies, the doctrine of preemption is derived from the supremacy clause, which establishes the hierarchy of different levels of government. *See* U.S. Const. art. VI, cl. 2; *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698–99, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984) (discussing various types of federal preemption); Ariz. Const. art. 2, § 3 ("The Constitution of the United States is the supreme law of the land."). Generally, when an issue affects both local and statewide interests, empowered local government entities, such as cities and counties, may enact and enforce relevant laws unless they have been preempted from doing so by state law. *See Wonders v. Pima County,* 207 Ariz. 576, 579, ¶ 9, 89 P.3d 810, 813 (App.2004). As we have noted, "[a] state law only preempts conflicting local ordinances when the subject matter of the legislation is of statewide concern and the state has appropriated the field." *Id.* (citing *Winkle v. City of Tucson,* 190 Ariz. 413, 416, 949 P.2d 502, 505 (1997)); *Scottsdale v. Scottsdale Associated Merch., Inc.,* 120 Ariz. 4, 5, 583 P.2d 891, 892 (1978) ("When the subject of legislation is a matter of statewide concern the Legislature has the power to bind all throughout the state[.]"). Given Coconino County's putative statutory authority to act in the subject area of this case and given ADEQ's acknowledgement that such enforcement powers were not limited by its delegation agreement, only a finding of preemption could have prevented Coconino County from pursuing its action in court. *See, e.g.,* A.R.S. §§ 49–262(B) (2005),–143, 36–602.

¶ 25 To determine whether a local government has been preempted, a court must find "a clear manifestation of legislative

intent to preclude local control" and an actual conflict between local regulation and governing state law. *Wonders,* 207 Ariz. at 579, ¶ 9, 89 P.3d at 813. In addition, "a 'case-by-case analysis' is required to determine whether the powers and responsibilities of an administrative body are sufficient to permit an inference that preemption would be appropriate." *Madsen v. W. Am. Mortgage Co.,* 143 Ariz. 614, 621, 694 P.2d 1228, 1235 (App. 1985).

¶ 26 Here, Coconino County's complaint was based on its putative statutory powers that, it claimed, were valid notwithstanding various state statutes and regulations concerning "septage sludge use and disposal practices." *See, e.g.,* A.R.S. §§ 49–262(B),–704 (2005) ("This chapter does not prevent any county, city or town from adopting and enforcing any ordinance, resolution or other policy relating to solid waste regulation or solid waste services if such policy is otherwise authorized by statute or charter and is not in conflict with this chapter or any rule or regulation adopted pursuant to this chapter."), 11–830(A)(3) (restricting, under certain conditions, local regulation of "use or occupation of land or improvements for agricultural composting"), 3–112(B) (presumption that lawful agricultural operations do not adversely affect public health and safety). Such putative authority called for an examination into the scope of Coconino County's powers and the extent, if any, to which the state may have preempted them. Yet the trial court did not undertake such an analysis here, relying only upon the doctrine of primary jurisdiction. As we have explained above, however, the doctrine of primary jurisdiction applies to further the coordination between courts and agencies, which represent equal branches of a single government, not to determine the enforcement powers of two different levels of government. Thus, the trial court erred in applying the doctrine of primary jurisdiction when the facts of this case called for an inquiry into the scope of Coconino County's power to act and the possible preemption of such power by the state.

---

4. If the exhaustion of remedies doctrine, which is based on an agency's original, exclusive jurisdiction, does not control when further resort to the administrative process would be futile, *see Moul-* *ton,* 205 Ariz. at 512–13, ¶ 18, 73 P.3d at 643–44, certainly the doctrine of primary jurisdiction, a *discretionary* doctrine, cannot control.

*Compare Far East Conference,* 342 U.S. at 574–76, 72 S.Ct. 492 (examining scope of applicable federal law and standing of government to pursue its claim).

## CONCLUSION

¶ 27 For the reasons discussed above, we reverse the trial court's dismissals and remand this matter for further proceedings consistent with this opinion.[5]

CONCURRING: JON W. THOMPSON, Presiding Judge, and SUSAN A. EHRLICH, Judge.

---

**5.** In light of our resolution of this case, we need not address the issues raised in Antco's cross-appeal or the parties' requests for interpretation of various state statutes.