IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAR 15 2006

COURT OF APPEALS
DIVISION TWO



| | |
|---|---|
| BARBARA LaWALL, Pima County Attorney, | ) ) ) |
| Plaintiff/Appellee, | ) ) |
| v. | ) ) |
| PIMA COUNTY MERIT SYSTEM COMMISSION; GEORGIA BROUSSEAU, Chairman; MIKE HELLON, RICHARD HUFF, MANUEL MEDINA, and MIKE MINCHEFF, in their official capacities, | ) ) ) ) ) ) ) ) ) |
| Defendants/Appellants, | ) ) |
| and | ) ) |
| JOANN SCAMMON, a single woman, | ) ) |
| Real Party in Interest/Appellant. | ) ) ) |

2 CA-CV 2005-0140
DEPARTMENT B

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20053047

Honorable Carmine Cornelio, Judge

REVERSED AND REMANDED

Barbara LaWall, Pima County Attorney
  By Leslie K. Lynch                                                                                          Tucson
                                         Attorneys for Plaintiff/Appellee

Corey & Kime
  By Barry M. Corey and Jason E. Smith                                                      Tucson
                                Attorneys for Defendants/Appellants

Joann Scammon                                                                                          Tucson
                                    In Propria Persona

B R A M M E R, Judge.

¶1         The Pima County Merit System Commission appeals from a decision of the superior court in a special action filed by Barbara LaWall, the Pima County Attorney. The trial court found the Commission lacked jurisdiction to hear a claim of coerced resignation by an employee of the county attorney's office (PCAO), real party in interest Joann Scammon. We reverse.

### Factual and Procedural Background

¶2         Scammon resigned from her position with the PCAO effective June 1, 2004. The PCAO had previously mailed Scammon a notice of intent to terminate her, but she apparently had not read the notice before she submitted her resignation.[1] Scammon filed an

---

[1] Pima County Merit System Rule 12 outlines a three-step procedure for the county to terminate an employee. The employee is first given a notice of intent to terminate, after which there must be a pre-action meeting between the supervisor and the employee, followed by an order of termination, which the employee may appeal to the Commission. *See* Merit Sys. R. 12, *available at* http://www.pima.gov/hr/pdf/MeritRules.pdf.

2

administrative appeal with the Commission on June 4, alleging her resignation as a victim witness advocate for the PCAO had been coerced and she had suffered a "constructive termination and unlawful discrimination." The PCAO filed a motion to dismiss the appeal, asserting a lack of subject matter jurisdiction. The Commission denied the motion, but continued the appeal pending the filing of the PCAO's special action in superior court.

¶3 The special action complaint alleged the Commission had exceeded its subject matter jurisdiction in denying the motion to dismiss the appeal. Following oral argument, the trial court ruled the Commission "lacks authority to hear Ms. Scammon's Appeal." The trial court noted "[i]t is undisputed that Ms. Scammon was not terminated pursuant to the three-step procedure set forth in the Pima County Merit System Rules, and that the Pima County Attorney's Office never issued a written Notice of Termination." The trial court determined the enabling statutes for the Commission, A.R.S. §§ 11-351 through 11-356, must be construed narrowly and the Commission may only hear an employee's appeal following a written order terminating that employee. This appeal followed.

**Discussion**

¶4 We review a trial court's interpretation of rules and statutes de novo. *Pima County v. Pima County Law Enforcement Merit Sys. Council* (*Harvey*), 211 Ariz. 224, ¶ 13, 119 P.3d 1027, 1030 (2005). The statutes at issue are A.R.S. §§ 11-351 through 11-356, which govern county employee merit systems. These statutes permit a county, by resolution of its board of supervisors, to "adopt a limited county employee merit system for any and all

3

county . . . employees." § 11-352(A). Section 11-353 mandates that the board, after adopting such a resolution, appoint a merit system commission. Section 11-354 defines the powers and duties of a commission as those "necessary to carry out the provisions of this article." The procedure for employee appeals is set forth in § 11-356, which provides:

> A. Any officer or employee in the classified civil service may be dismissed, suspended or reduced in rank or compensation by the appointing authority after appointment or promotion is complete only by written order, stating specifically the reasons for the action. The order shall be filed with the clerk of the board of supervisors and a copy thereof shall be furnished to the person to be dismissed, suspended or reduced.
>
> B. The officer or employee may within ten days after presentation to him of the order, appeal from the order through the clerk of the commission. Upon the filing of the appeal, the clerk shall forthwith transmit the order and appeal to the commission for hearing.
>
> C. Within twenty days from the filing of the appeal, the commission shall commence the hearing and either affirm, modify or revoke the order. The appellant may appear personally, produce evidence, have counsel and, if requested by the appellant, a public hearing.
>
> D. The findings and decision of the commission shall be final, and shall be subject to administrative review as provided in title 12, chapter 7, article 6.

The Pima County Merit System Rules (MSR) state: "For the purposes of employee appeals pursuant to these Rules, a resignation in lieu of dismissal shall be deemed to be a dismissal." MSR 1.29, *available at* http://www.pima.gov/hr/pdf/MeritRules.pdf. Because MSR 14.1 permits an employee to appeal a dismissal to the Commission, it therefore appears the MSR

4

allow an employee to appeal a "resignation in lieu of dismissal." The Commission argued to the trial court that a coerced resignation or constructive discharge is a "resignation in lieu of dismissal," which permits Scammon to appeal to the Commission if it finds her resignation was involuntary.[2]

¶5        The Commission contends a "personnel action form," the official record of Scammon's resignation, can constitute a "written order" meeting the requirements of § 11-356(A).[3] However, the Commission did not make this argument in the trial court and, therefore, has waived it. *See Cohn v. Indus. Comm'n*, 178 Ariz. 395, 398, 874 P.2d 315, 318 (1994). Even if the argument were not waived, the trial court made a factual finding that there was no written order of termination, and no personnel action form is in the record on appeal. We presume the record supports the trial court's finding. *See Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995).

---

[2]As the trial court noted, the Commission believes that its jurisdiction hinges on the factual determination of whether Scammon's dismissal was coerced and that it should be permitted to decide this factual issue to determine if it can properly exercise jurisdiction. The trial court pointed out: "The Commission has not clearly stated . . . what will occur if it makes a finding of coercion" and hears the appeal. In its opening brief, the Commission claims the PCAO would have to "substantiate a basis for dismissal" at a hearing before the Commission if it found Scammon's resignation had been coerced.

[3]A personnel action form differs from a notice of intent to terminate. The latter is the first step in the MSR termination procedure, while a personnel action form is a record of a completed action, in this case, the PCAO's acceptance of Scammon's resignation. The Commission has attached a notice of intent to terminate as Appendix 3 to its opening brief and what purports to be a personnel action form relating to Scammon as Appendix 5. Because these items are not part of the record on appeal, however, we do not consider them. *See Lewis v. Oliver*, 178 Ariz. 330, 338, 873 P.2d 668, 676 (App. 1993); Ariz. R. Civ. App. P. 11(a), 17B A.R.S.

¶6      The Commission argues the county merit commission enabling statutes are remedial in nature and should be "liberally construed to achieve the special purpose of the statute[s]." Remedial statutes "are designed to redress existing grievances and introduce regulations conducive to the public good." *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576, 521 P.2d 1119, 1122 (1974). "[W]e construe remedial statutes liberally to achieve the special purpose underlying the legislation." *Special Fund Div. v. Indus. Comm'n* (*Burrell*), 191 Ariz. 149, ¶ 9, 953 P.2d 541, 544 (1998). But, we need not decide if the statutes are remedial in nature because A.R.S. § 1-211(B) requires "[s]tatutes [to] be liberally construed to effect their objects and to promote justice." And "the primary rule of statutory construction is to find and give effect to legislative intent." *Mail Boxes, Etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995); *see also Holland v. Williams Mountain Coal Co.*, 256 F.3d 819, 823 (D.C. Cir. 2001) (because all statutes seek to remedy some problem, remedial distinction is meaningless). Although we will construe the statutes in question liberally, *Harvey* dictates that an agency such as the Commission has no inherent powers. "Because administrative agencies derive their powers from their enabling legislation, their authority cannot exceed that granted by the legislature." *Harvey*, 211 Ariz. 224, ¶ 13, 119 P.3d at 1030.

¶7      The PCAO insists the language of § 11-356 unambiguously limits the jurisdiction of the county employee merit system to written orders because § 11-356(A) allows a dismissal "only by written order" and § 11-356(B) only permits an appeal of such

6

order. The PCAO argues, therefore, that because Scammon resigned, the Commission lacks jurisdiction, even if that resignation was coerced or was a constructive discharge. *See Mail Boxes, Etc.*, 181 Ariz. at 121, 888 P.2d at 779 (if language of statute is unambiguous, it is conclusive, absent clearly expressed legislative intent to contrary); *Harvey*, 211 Ariz. 224, ¶ 13, 119 P.3d at 1030 (administrative agency's power cannot exceed that granted by legislature). We disagree. The language in question is not a jurisdictional requirement. Instead, it protects an employee by dictating the termination procedure and requiring documentation of the reasons for a discharge. It does not limit the jurisdiction of the county merit system commission to cases involving written orders. That jurisdiction is granted in § 11-352, which permits counties to create a merit system commission, and in § 11-354, which grants that commission the powers necessary to accomplish the purposes of the merit system.

¶8        Administrative agencies "have no common law or inherent powers." *Kendall v. Malcolm*, 98 Ariz. 329, 334, 404 P.2d 414, 417 (1965). This does not mean, however, that those powers must be, as the PCAO claims, "specifically granted by statute." *See Oracle Sch. Dist. No. 2 v. Mammoth High Sch. Dist. No. 88*, 130 Ariz. 41, 43, 633 P.2d 450, 453 (App. 1981) ("A board or commission . . . has only limited powers and it can exercise no powers which are not expressly *or impliedly granted*.") (emphasis added); *see also Long v. Napolitano*, 203 Ariz. 247, ¶ 44, 53 P.3d 172, 185 (App. 2002) ("[W]hat a statute necessarily implies is as much a part of the statute as what is explicitly stated."). That an employer under

7

§ 11-356(A) may only dismiss an employee by a written order necessarily implies the merit system commission has authority to ensure that procedure is followed.

¶9    Moreover, to read the "written order" language as a jurisdictional requirement would be directly at odds with the clearly expressed legislative intent of the county merit system statutes. The purpose of the system is stated as follows: "The goals and functions of county employee merit systems are designed to *protect employees*." 1981 Ariz. Sess. Laws, ch. 273, § 1 (emphasis added); *see also Wolkin v. Civil Service Comm'n*, 21 Ariz. App. 341, 345, 519 P.2d 194, 198 (1974) (purpose of civil service commission is "to provide for the '. . . security of the faithful employee by giving him permanence of employment . . . and to free such employee from the fear of political and personal prejudicial reprisal'"), *quoting* 15 Am. Jur. 2d *Civil Service* § 1 (1964). We fail to see how allowing an employer to avoid county merit system commission review by coercing an employee's resignation would serve the stated legislative purpose of protecting employees.

¶10    Further, when the legislature enacted the county merit system statutes in 1969, the legislature expressed its intent that the merit system be "adaptable to [the county's] size and type." 1969 Ariz. Sess. Laws, ch. 117, § 1. The legislature also granted county merit system commissions powers "necessary to carry out the provisions of this article." § 11-354. This intended adaptability and grant of authority would be superfluous if the county merit system commission were limited to reviewing written orders of termination with virtually no

8

other powers or duties.[4]  Moreover, we believe the legislature implicitly expressed a general intent to grant a commission jurisdiction to address all matters related to dismissals, suspensions, or reductions in rank by requiring that all such events be executed by written order and by giving a commission authority to hear appeals from such orders.  *See* § 11-356.  Thus, we deduce the legislature did not intend to limit a county merit system commission's review to terminations by written orders.

**¶11**      Our supreme court's decision in *Burrell* lends support to this conclusion.  The statute at issue in *Burrell* was A.R.S. § 23-1065(C), a component of Arizona's workers' compensation act.  191 Ariz. 149, ¶ 9, 953 P.2d at 545.  At that time, § 23-1065(C) required an employer seeking contribution from the Special Fund Division to produce written records demonstrating its awareness of an employee's pre-existing disability.  191 Ariz. 149, ¶ 10, 953 P.2d at 545.  The court found that requirement was "'merely evidentiary'" and refused to construe it in a way that would defeat the purpose of the statute, "to promote the hiring of disabled or handicapped workers."  *Id., quoting Special Fund Div. v. Indus. Comm'n*, 189 Ariz. 162, 165, 939 P.2d 795, 798 (App. 1997) (emphasis deleted).

---

[4]We note that § 11-355 seems to grant a county merit system commission the power to establish qualifications and standards for county positions.  The section provides:  "The minimum qualifications or standards prescribed for any class or grade of employment shall not be less than those prescribed by law for the class or grade of county officers and employees."  We do not see, however, how a general intent of adaptability and grant of authority could refer solely to the power to establish qualifications and classifications.

9

¶12    Admittedly, *Burrell* is distinguishable from the present case. A writing existed in *Burrell* that made it clear the employer had been aware the employee suffered from a disability, but the writing did not state the nature of the disability. *Id*. ¶ 2. That the employer had been aware of the nature of the disability was proved by testimony. *Id*. ¶ 3. Here, in contrast, there is no written order at all. However, we find the underlying reasoning of *Burrell* compelling. To construe the written order requirement as jurisdictional would contravene the purpose of the county merit system commission statutes. As our supreme court did in *Burrell*, "[w]e therefore interpret the statute in the manner that best carries out the legislative purpose." *Id*. ¶ 10.

¶13    *Ross v. Arizona State Personnel Board*, 185 Ariz. 430, 916 P.2d 1146 (App. 1995), is also consistent with our conclusion. Ross, a state employee, "[i]n a stressful moment at work, . . . told her superiors, 'I give up. I quit.'" *Id*. at 431, 916 P.2d at 1147. Ross maintained she had not intended the statement as a resignation, but instead, as a manifestation of her intent to cease working on a particular project. *Id*. at 431-32, 916 P.2d at 1147-48. Her employer, the Arizona Department of Transportation, interpreted her statement as a resignation and "told her she could not return to work because her resignation had been accepted." *Id*. at 432, 916 P.2d at 1148. Ross appealed what she called her "dismissal," but the state personnel board declined to hear her appeal, claiming it lacked jurisdiction. *Id*.

10

¶14 The state personnel board's interpretation of its own rules only permitted an appeal from a written "disciplinary action." *Id*. at 433, 916 P.2d at 1149. The controlling statute stated: "The personnel board shall hear and review appeals as provided in this article relating to dismissal from state service, suspension for more than forty working hours or demotion resulting from disciplinary action as defined in the personnel rules." The term "disciplinary action" was not defined in the rules. *Id*. at 433, 916 P.2d at 1149. The board contended the term was defined by the procedure its rules mandated, that is, an employer initiates a disciplinary action in a writing detailing the charges against the employee. *Id*. Therefore, the board argued, it lacked jurisdiction to hear the appeal because there was no such writing. *Id*. However, the court ruled: "We cannot agree that an employee's right to appeal to the Board is conditioned on the employer's compliance with the personnel rules." *Id*. The court held that, before the board could determine whether it had jurisdiction, it must first determine if there had been a "dismissal." *Id*.

¶15 *Ross* is not directly on point. The enabling statutes for the state personnel board give it a broader range of powers and duties than the statutes at issue here give the Commission. Moreover, the legislature did not condition the state personnel board's jurisdiction on the existence of a written order, but only on the existence of a disciplinary action. Instead, it was the board's rules that required a written disciplinary action. In contrast, the written order language central to this case is contained in § 11-356. We note, however, that an administrative rule has the same effect and force as a statute. *See Gibbons*

11

*v. Ariz. Corp. Comm'n*, 95 Ariz. 343, 347, 390 P.2d 582, 585 (1964). Further, we agree with *Ross*'s guiding principle: an employee's right to administrative review should not be eviscerated by the employer's failure to follow the statutory procedure. Nothing in the statutes suggests the legislature contemplated or desired such an outcome.

¶16 The Commission also cites cases from other jurisdictions addressing similar language in merit or civil service commission statutes. In *Haberer v. Woodbury County*, 560 N.W.2d 571, 574 (Iowa 1997), the Iowa Supreme Court found a civil service commission could exercise jurisdiction over a constructive discharge claim. The controlling statute, Iowa Code Ann. § 341A.12, permitted an employee's removal "only upon written accusation." The court found the civil service commission had jurisdiction despite the lack of a written accusation because a constructive discharge constitutes a "removal" "attributable to the actions of an employer." 560 N.W.2d at 574.

¶17 The Wisconsin Supreme Court reached a similar conclusion in *Watkins v. Milwaukee County Civil Service Commission*, 276 N.W.2d 775 (Wis. 1979). The governing statute required the employer to make charges in writing, but the court found the civil service commission had jurisdiction to hear a claim of coerced resignation. *Id*. at 780. The court relied on the purpose of the civil service commission, to give employees "security of tenure and impartial evaluation," and noted coerced resignations "pose[] serious possibilities of abuse." *Id*. at 779.

12

¶18    The Washington Court of Appeals construed a merit commission statutory scheme similar to Arizona's in *Micone v. Town of Steilacoom Civil Service Commission*, 722 P.2d 1369 (Wash. Ct. App. 1986). The court sanctioned a civil service commission's conducting a jurisdictional hearing on an allegation of coerced resignation. *Id.* at 1371. The statute in question permitted an employee to be dismissed "only upon written accusation." *Id.* The court found a coerced or involuntary resignation was "equivalent to a discharge" and would "not comply with the procedural requirement[] [of a written accusation]." Accordingly, the court held a coerced or voluntary resignation fell within the merit commission's jurisdiction. *Id.*

¶19    We find instructive the cases the Commission cites. Each jurisdiction has treated a written order or accusation requirement as a procedural burden on the employer, not a jurisdictional limit on the merit or civil service commission. And the court in *Micone* authorized the commission to hear an appeal when an employer failed to comply with its procedural burden rather than limiting the commission's ability to proceed. The PCAO cites no cases, and we have found none, in which a court has ruled that "written order" or "written accusation" language limits the jurisdiction of a merit or civil service commission.

¶20    We find the "written order" language of § 11-356 to be a procedural requirement that an employer, here the PCAO, must follow. It is not a jurisdictional limit on the county merit system commission. To hold otherwise would contradict the legislature's

13

express intent to protect employees from improper dismissals.  Accordingly, we reverse the

trial court's ruling and remand the case for further proceedings consistent with this decision.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

_____
PETER J. ECKERSTROM, Presiding Judge

_____
JOSEPH W. HOWARD, Judge