FILED BY CLERK

APR 24 2007

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

ARIZONA DEPARTMENT OF )
ECONOMIC SECURITY, )
)
            Plaintiff/Appellee, )
)
                  v. )
)
PAMELA J. REDLON, )
)
            Defendant/Appellant. )
)

2 CA-CV 2006-0051
DEPARTMENT B

**O P I N I O N**

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV200500471

Honorable Stephen M. Desens, Judge

REVERSED AND REMANDED

Terry Goddard, Arizona Attorney General
  By Samantha E. Blevins
                                    Phoenix
                    Attorneys for Plaintiff/Appellee

Pamela J. Redlon
                                      Bisbee
                            In Propria Persona

E S P I N O S A, Judge.

¶1       Appellant Pamela Redlon appeals from an order of the Cochise County Superior Court finding the Arizona State Personnel Board lacked jurisdiction to hear her employment claim. For the reasons expressed below, we reverse the superior court's

judgment and remand with directions to refer this matter back to the Board for a hearing on the merits of Redlon's claim.

**Factual and Procedural Background**

¶2        Because Redlon has failed to include citations to the record in her statement of facts, as required by Ariz. R. Civ. App. P. 13(a)(4), 17B A.R.S., we disregard her factual narrative and draw the facts from the state's answering brief and the record on appeal. It appears, however, that the essential facts of the case are undisputed. Redlon was a long-time employee of the Arizona Department of Economic Security (ADES). In March 2004, she received from ADES a Notice of Charges of Misconduct that alleged four incidents in which she had been "discourteous" to members of the public and "insubordinate" to her supervisors. ADES reviewed her written response to the charges and prepared a letter of dismissal. On the morning of April 2, Redlon was informed she would be dismissed from her employment if she did not resign by noon. ADES had prepared another letter for her signature that stated "I, Pam Redlon . . . am submitting this letter stating that I am involuntarily resigning from state service." Redlon protested that the charges against her were "not enough" for dismissal and that she did not want "[]either action to occur." She requested until 5:00 p.m. to "think about it." ADES supervisors reiterated there were "no other choices"; she must either resign by 12:00 or she would be issued a letter of dismissal. They also told her that if she resigned ADES would not contest her application for unemployment benefits, she would leave state employment in "good standing" and be eligible for reinstatement, and she could use ADES as a reference for future

2

employment—advantages that would not be available were she dismissed. Redlon was not told, however, that if she were dismissed she could contest the underlying charges through an appeal to the Arizona State Personnel Board ("the Board"); nor was she shown the dismissal letter, which contained a notice of her appeal rights.[1]

¶3 Redlon signed and submitted to ADES the resignation letter it had prepared. Within a few days, she wrote to ADES and requested the reasons she had been "requir[ed]" to resign. ADES responded that she had been given the "option to resign" for the reasons listed in the Notice of Charges of Misconduct she had received in March. On April 6, Redlon applied for unemployment benefits and, after initially being denied, received the benefits in full. In February 2005, she appealed her separation from employment to the Board.

¶4 In March 2005, a Board-appointed officer held a hearing to determine whether Redlon's claim was within the Board's jurisdiction. The officer concluded the Board should accept jurisdiction because Redlon's resignation had been "involuntary" and "the result of duress, coercion, and misrepresentation." At a meeting in May, the Board made "no ruling on the adoption of the hearing officer's [report]" but ordered a hearing on the merits of Redlon's claim "as if it were a dismissal from state service." In July, ADES filed a complaint in the Cochise County Superior Court, seeking a stay of the hearing and review of the Board's decision to accept jurisdiction. The superior court stayed the hearing and, in

---

[1]The state's claim that Redlon was presented with the dismissal letter is not supported by the record.

January 2006, concluded the Board lacked jurisdiction over the matter and dismissed Redlon's claim.[2] Her appeal to this court followed.

## Appellate Jurisdiction[3]

¶5 Under the Arizona Administrative Review Act, A.R.S. §§ 12-901 through 12-914, administrative decisions are not judicially reviewable until the agency has issued a final decision "that affects the legal rights, duties or privileges of persons and that terminates the proceeding before the administrative agency." §§ 12-901(2) and 12-902(B). That requirement is an express codification of the exhaustion of administrative remedies doctrine, which compels parties to avail themselves of all available administrative processes before seeking the aid of a court. *See Sw. Paint & Varnish Co. v Ariz. Dep't of Envtl. Quality*, 194 Ariz. 22, ¶ 10, 976 P.2d 872, 874 (1999) ("We read § 12-902(B) as encompassing the traditional doctrine of exhaustion of administrative remedies."); *Coconino County v. Antco, Inc.*, 214 Ariz. 82, ¶ 8, 148 P.3d 1155, 1159 (App. 2006); *see also Estate of Bohn v. Waddell*, 174 Ariz. 239, 246, 848 P.2d 324, 331 (App. 1992) ("Courts have characterized the exhaustion rule as a rule of judicial administration that is usually applied by virtue of express statutory mandate.").

---

[2]The Board did not explicitly find it had jurisdiction, but we agree with the superior court that the Board's order "setting th[e] matter for a hearing on the merits of the 'dismissal' [wa]s an implicit finding of jurisdiction."

[3]Although not addressed by either party, we have an independent obligation to ensure our jurisdiction over each appellate case. *See Grand v. Nacchio*, 214 Ariz. 9, ¶ 12, 147 P.3d 763, 769 (App. 2006).

**¶6** The doctrine applies, however, only when the statutory mandate grants an administrative agency original jurisdiction over a matter. *Campbell v. Mountain States Tel. & Tel. Co.,* 120 Ariz. 426, 429, 586 P.2d 987, 990 (App. 1978); *see Coconino County*, 214 Ariz. 82, ¶ 8, 148 P.3d at 1159 (exhaustion of remedies doctrine applies where claim cognizable in first instance by administrative agency, but not "when the jurisdiction of the agency is being contested"); *Estate of Bohn*, 174 Ariz. at 248, 848 P.2d at 333 ("[A] court should not summarily apply the doctrine when a party challenges the agency's jurisdiction."). Thus, the superior court "has authority to review administrative agency proceedings . . . [by direct appeal if] the agency's jurisdiction is being challenged." *Murphy v. Bd. of Med. Exam'r of State of Ariz.*, 190 Ariz. 441, 448, 949 P.2d 530, 537 (App. 1997) (superior court properly determined jurisdictional bounds of administrative agency even though agency had not issued "final decision" within definition of § 12-901(2)); s*ee also Moulton v. Napolitano*, 205 Ariz. 506, ¶ 18, 73 P.3d 637, 643-44 (App. 2003) (doctrine of exhaustion of administrative remedies not applicable where subject matter jurisdiction of agency contested); *State v. Board of Tech. Reg. v. Bauer*, 84 Ariz. 237, 242, 326 P.2d 358, 361 (1958) (under ARA, notwithstanding lack of final decision on issuance of architectural license, board's authority to require applicant to sit for examination subject to appeal). Accordingly, the superior court had jurisdiction over ADES's appeal challenging the Personnel Board's subject matter jurisdiction, as do we. *See* A.R.S. § 12-2101.

**Discussion**

## A. Personnel Board's General Jurisdiction

**¶7**        The Personnel Board's jurisdiction is established by A.R.S. § 41-782(A), which provides that the Board "shall hear and review appeals . . . relating to dismissal from state service . . . resulting from disciplinary action as defined in the personnel rules." The Board does not have authority to hear appeals relating to voluntary resignations from state employment. *See* A.R.S. § 41-782(A); *Ross v. Ariz. State Pers. Bd.*, 185 Ariz. 430, 432, 916 P.2d 1146, 1148 (App. 1995) ("If [the appellant] resigned, there was no dismissal and the Board lacks jurisdiction."); *see generally Pima County v. Pima County Law Enforcement Merit Sys. Council*, 211 Ariz. 224, ¶ 13, 119 P.3d 1027, 1030 (2005) (administrative agencies derive their powers from enabling legislation and their authority cannot exceed that granted by legislature). But the Board has discretion to determine whether an employee's separation from employment was the result of a resignation or a dismissal, and thus has the power to determine its own jurisdiction. *See Ross*, 185 Ariz. at 432, 916 P.2d at 1148. Whether § 41-782 empowers the Board to address Redlon's claim is a question of law that we review *de novo. See id.*

## B. Procedural Due Process

**¶8**        Permanent state employees, such as Redlon, have a constitutionally protected property interest in their continued employment and cannot be deprived of this interest without due process of law. *See Gilbert v. Homar*, 520 U.S. 924, 928-29, 117 S. Ct. 1807, 1811 (1997); *Deuel v. Arizona State School for Deaf and Blind*, 165 Ariz. 524, 526, 799

6

P.2d 865, 867 (App. 1990). Due process requires that state employees dismissed from their employment be provided a written notice of the specific grounds for the dismissal; disclosure of the evidence supporting the dismissal; the opportunity to confront and cross-examine available adverse witnesses; the opportunity to be heard in person and present evidence; the opportunity to be represented by counsel; a fair-minded and impartial decision maker; and a written statement by fact-finders as to the evidence relied upon and the reasons for the determination made.[4] *See Deuel*, 165 Ariz. at 527, 799 P.2d at 868; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542-48, 105 S. Ct. 1487, 1493-96 (1985). State employees who have been separated from their employment may receive due process through an appeal to the Board.[5] *See* A.R.S. §§ 41-782(A) and 41-785; Ariz. Admin. Code R2-5.1-103.

¶9        Courts have held that employees may "waive" their right to due process by resigning from their employment. *See Morrell v. Stone*, 638 F. Supp. 163, 168 (W.D. Va. 1986); *Illinois ex rel. Schoepf v. Bd. of Educ.*, 606 F. Supp. 385, 390 (N.D. Ill. 1985)*; but see Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 n.7 (4th Cir. 1988) (noting

---

[4]In accordance with state regulations, ADES informed Redlon of the charges against her and permitted her an opportunity to oppose the charges in writing. *See* Ariz. Admin. Code R2-5-803(A). This pre-termination procedure, however, does not in itself constitute due process for dismissed employees. *See Deuel*, 165 Ariz. at 527, 799 P.2d at 868.

[5]An appeal to the Board provides dismissed employees a hearing before an impartial decision maker, Ariz. Admin. Code R2-5.1-103(I); the opportunity to be heard in person and to present and examine evidence, Ariz. Admin. Code R2-5.1-103(I); A.R.S. § 41-785(B); the opportunity to be represented by counsel, Ariz. Admin. Code R2-5.1-103(I); A.R.S. § 41-785(H); and a written statement as to the reasons for the determination of their claim, Ariz. Admin. Code R2-5.1-103(E) and (R).

"technical [in]accuracy" of labeling resignation a "waiver" of right to procedural due process). A resignation must be voluntary to constitute a waiver of the right to due process. *See, e.g., Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992). Thus, when the Board finds an employee's resignation was involuntary, it properly accepts jurisdiction to hear the appeal. *See LaWall v. Pima County Merit System Comm'n*, 212 Ariz. 489, n.2, 134 P.3d 394, 396 n.2 (App. 2006) (noting Merit System Commission properly accepted jurisdiction where it found employee's resignation coerced and involuntary).

¶10　　　　As ADES implicitly acknowledges, whether the Board has jurisdiction to hear Redlon's appeal turns on whether her resignation was voluntary. ADES maintains Redlon's resignation must be viewed as voluntary because "she understood that if she had not resigned, she would have been dismissed," and "[t]here is no evidence that [ADES] believed that the reasons for her dismissal were insufficient." Redlon contends her resignation was involuntary because it was "coerced" and ADES failed to inform her of her "appeal rights" or that she would be waiving her right to appeal the underlying charges.

## C. Involuntary Resignation

¶11　　　　Arizona courts have not addressed the circumstances under which a resignation from state employment is sufficiently involuntary to trigger the protections of the due process clause.[6] But in other jurisdictions that have, an employee's resignation is presumed

---

[6]Arizona laws and regulations do in other contexts address the circumstances under which an employee's resignation is considered a dismissal. For purposes of unemployment insurance, for example, an employee's resignation is considered a dismissal if the employee was informed he or she must either resign or be dismissed. *See* Ariz. Admin. Code R6-3-50135(A)(1)(b)(ii). And, as ADES points out in its answering brief, A.R.S. § 23-1502

voluntary absent evidence to the contrary. *See Shoaf v. Dep't Of Agric.*, 260 F.3d 1336, 1340-41 (Fed. Cir. 2001); *Staats v. U.S. Postal Service*, 99 F.3d 1120, 1123 (Fed. Cir. 1996); *Covington v. Dep't of Health and Human Serv.*, 750 F.2d 937, 941 (Fed. Cir. 1984). The fact that an employee is faced with an inherently unpleasant situation or that his or her choice is limited to two unpleasant alternatives—for example, resignation or dismissal—does not necessarily make the employee's decision to resign any less voluntary. *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987); *Covington*, 750 F.2d at 942. To determine whether a resignation is voluntary, a court must examine the totality of the surrounding circumstances to test the ability of the employee to exercise free choice. *Bergman v. United States*, 28 Fed. Cl. 580, 585 (1993); *Covington*, 750 F.2d at 941-42; *Scharf v. Dep't of the Air Force*, 710 F.2d 1572, 1574 (Fed. Cir. 1983). Voluntariness may be vitiated upon a finding that the resignation was obtained by state misrepresentation or deception, was based on a lack of information about the employee's right to due process, or was submitted under time pressure. *See Shoaf*, 260 F.3d at 1342; *Covington*, 750 F.2d at 943.

**¶12**       As ADES points out, there is no question that Redlon understood the nature of her dilemma, i.e., that she would be dismissed if she did not resign. But contrary to its

---

sets forth the factors an employee must establish to demonstrate his or her resignation was, in fact, a constructive discharge. That statute, however, applies to "actions" for constructive discharge and, "[i]n the statutes and laws of this state," an action is defined as "any matter or proceeding in a court, civil or criminal." A.R.S. § 1-215. Because Redlon's appeal to the Personnel Board was not an action in a civil or criminal court, § 23-1502 is inapplicable to this case.

assertion, such an understanding is not necessarily dispositive of whether her decision to resign was voluntary. *See Bergman*, 28 Fed. Cl. at 584-85 (1993) (whether an employee's resignation was voluntary requires examination of all facts and circumstances). Redlon did not understand, was not informed, and was given no time or opportunity to learn, that by choosing to resign she would waive her right to appeal the charges underlying her separation from employment. Indeed, the procedure employed by ADES virtually assured that Redlon would be unaware when she resigned that she was forfeiting her right to procedural due process.

**¶13**        In *Covington*, 750 F.2d 937, an employee of a federal agency was informed he could either retire or be separated from his position through a reduction-in-force (RIF) action. *Id.* at 939. After choosing to retire, he attempted to appeal the RIF action to the Merit Systems Protection Board. *Id*. at 939-40. That Board's presiding official found retirement was a voluntary action that was not appealable to the Board and dismissed Covington's appeal for lack of jurisdiction. *Id*. at 940. Covington then appealed to the full Board, claiming "he had not been informed that by choosing to retire he would forfeit his right to challenge the [RIF] action," but his appeal was denied. *Id*. at 941. Discussing the choice Covington had been given between retirement and dismissal, the court stated:

> The law does permit such a hard choice, "a choice, as the poet says, between 'death and exile,' a choice between the 'guillotine and the hangman's noose,' a choice between 'Scylla and Charybdis' . . . ."
>
> But the law also requires that a choice between two alternatives, however unpleasant, must be understood by the employee and that such a decision be freely made. In this case,

10

> the agency was responsible for Covington's lack of an informed choice. A decision made "with blinders on," based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process.

*Id*. at 943, *quoting Christie v. United States*, 518 F.2d 584, 591 (1975). The court found "[t]he agency's . . . failure to inform [Covington] that a retirement election would preclude a later appeal denied him the right to consider this fact in making his decision. Covington was given a Hobson's choice, that is to say no real choice at all." *Covington*, 750 F.2d at 943. He was therefore entitled to a Board hearing on the merits of his claim. *Id*. at 944.

¶14            In a different context, Division One of this court reached a similar conclusion in *Webb v. State ex rel. Arizona Board Of Medical Examiners*, 202 Ariz. 555, 48 P.3d 505 (App. 2002). Webb, a physician, was informed by the Arizona Board of Medical Examiners ("the Board") that one of his patients had filed a complaint against him and he could attend an informal interview at which the Board would determine whether to take disciplinary action against him. *Id*. ¶¶ 1, 5. Following the interview, the Board issued a public Decree of Censure against Webb; Webb then requested a formal Board hearing to contest the censure. *Id*. ¶¶ 6, 9. The Board denied his request, informing him he had waived his right to a formal hearing by attending the informal interview. *Id*. ¶ 9.

¶15            On appeal, the court first noted Webb had a property interest in his license to practice medicine and could not be deprived of this interest without due process of law. *Id*. ¶ 8. The informal interview had not in itself provided Webb with due process. *Id*. ¶ 17. The court found that, when the Board had advised Webb it would conduct an informal interview, "it did not state that he had the option to decline or that he could choose a formal

11

hearing instead." *Id.* ¶ 11. It also did not inform him he would be forfeiting any rights. *See id.* Webb had therefore not made "a knowing choice between an interview and a hearing." *Id.* ¶ 10. Not having voluntarily waived his right to due process, he was entitled to a hearing. *Id.*

**¶16** Both *Covington* and *Webb* demonstrate that when a government agency resolves to divest someone of a property interest, the agency must either afford that individual due process or at least inform him or her of the right; absent this information, a waiver of the right cannot be knowing and voluntary. *See Webb*, 202 Ariz. 555, ¶¶ 10-11, 48 P.3d at 508; *Covington*, 750 F.2d at 943. In contrast, it follows that an agency generally owes no duty to inform an individual of the right to due process if that individual foregoes or abandons a property interest such as, for example, if Covington had originated the intent to retire or had Webb decided to quit the practice of medicine. *See id.* But a distinction arises when the impetus for surrendering the property interest originated with the government agency rather than with the individual.

**¶17** Here, Redlon was told her employment would terminate by either resignation or dismissal. But she was not informed she had a right to due process or that resignation would waive this right. Nor was she shown a copy of the dismissal letter, which contained a notice of her right to appeal a dismissal to the Board. She was, therefore, unable to consider her right to appeal in determining whether to resign or accept dismissal. The right to appeal was, in our view, the sole attribute of a dismissal that could make it preferable to

12

resignation; she was therefore presented with a Hobson's choice, no real choice at all.[7] ADES clearly could have informed her that by choosing to resign she would forfeit her right to appeal the underlying charges. And its failure to do so is especially conspicuous given Redlon's insistence at the time that the charges against her did not warrant dismissal. A decision such as this one, made "with blinders on" and based on "a lack of information, cannot be binding as a matter of fundamental fairness and due process." *Covington*, 750 F.2d at 943.

¶18        Further, Redlon was not provided an adequate and reasonable amount of time to make her decision and to possibly discover for herself that she had the right to due process. She was told she must choose between resignation and dismissal "by 12 o'clock noon," which gave her at most, a few hours to make a crucial decision.[8] She was also denied her request to have until the end of the work day to "think about [it]." As a result, she did not have an opportunity to deliberate and reflect on the matter or to consult with others about her options. ADES has not suggested any circumstances existed that made it necessary for Redlon to decide within a few hours how she would conclude her twenty years of state employment. The Board could have also considered this time pressure in

---

[7]The superior court, in its order finding Redlon's resignation voluntary and dismissing her appeal, found that she had testified her "main thing was that [she] wanted to be able to reinstate and go to Tucson." This fact emphasizes, however, that she was presented with only one real option.

[8]Although Redlon was told she would be dismissed if she did not resign, she was not in fact dismissed after she asserted several times that she would not resign. Instead, her supervisor, apparently believing resignation was in her best interest, "ke[pt] asking [her] to quit."

13

determining whether her resignation had been voluntary. *See Staats*, 99 F.3d at 1126 (noting resignations found involuntary "when the agency has demanded that the employee make an immediate decision"); *Perlman v. United States*, 490 F.2d 928, 933 (1974) (resignation involuntary where employee had "a matter of hours to make a very significant decision"); *Paroczay v. Hodges*, 219 F. Supp. 89, 94 (D.D. C. 1963), *quoting Weisert v. Bramman*, 216 S.W. 2d 430, 434 (1948) (resignation involuntary where employee did not have time and opportunity "'for full and free investigation, deliberation and reflection'" and request for time to contemplate matter was denied); 63C Am. Jur. 2d *Public Officers and Employees* § 158 (1997) (resignation may be involuntary if employee not "given sufficient time and opportunity for deliberation of the choice posed").

¶19 ADES contends that, by "exercising jurisdiction in this case, the Board in effect determines that government agencies have a duty to inform employees who resign of appeal rights for discipline they have not received." However, as noted above, this is an incorrect statement of the duty. Our reasoning imposes such a duty only when the impetus for resignation originates with and is advanced by the governmental agency. *See Webb*, 202 Ariz. 555, ¶¶ 10-11, 48 P.3d at 508; *Covington*, 750 F.2d at 943; *cf. LaWall*, 212 Ariz. 489, ¶ 17, 134 P.3d at 399 ("coerced resignations 'pose[ ] serious possibilities of abuse'"), *quoting Watkins v. Milwaukee County Civil Serv. Comm'n*, 276 N.W.2d 775, 779 (1979). And we have little difficulty concluding that the state's ultimatum to Redlon—resign or be fired—may fairly be characterized as "disciplinary action" itself.

**¶20**  In accordance with the above principles, we hold that when a state employee is compelled to choose between immediate resignation and dismissal, as Redlon was here, a resulting resignation may be found involuntary if the employee was not informed of the right to appeal a dismissal to the Board and that resignation waives this right. The Board properly accepts jurisdiction to hear such claims. Stated differently, employees who are given the option to resign should be permitted to make an informed decision and not unknowingly waive their right to due process. And an agency that seeks to dismiss an employee may not merely direct that employee's attention to the benefits of resignation, which, when chosen by the employee causes the undisclosed right to due process to vanish completely.

**¶21**  Because we find Redlon's resignation was involuntary, we do not address ADES's additional arguments that Redlon should have withdrawn her resignation pursuant to state regulations, *see* Ariz. Admin. Code R2-5-901(D), and that her resignation became final upon being accepted by the head of ADES.

**D. Timely Appeal**

**¶22**  ADES also contends the Board should have dismissed Redlon's appeal "for lack of jurisdiction" on the grounds it was untimely and she did not present good cause for her delay. Redlon claims good cause was established because ADES did not inform her of her right to appeal and she repeatedly and unsuccessfully "attempt[ed] to obtain an appeal form or information on an appeal." We review an employment board's finding of good cause for an untimely appeal for an abuse of discretion. *See Ariz. Commercial Diving*

15

*Serv., Inc. v. Applied Diving Serv., Inc.*, 212 Ariz. 208, ¶ 7, 129 P.3d 497, 500 (App. 2006). In doing so, we look to whether there is evidence in the record to support the board's determination. *See Siler v. Arizona Dep't of Real Estate*, 193 Ariz. 374, ¶ 14, 972 P.2d 1010, 1014 (App. 1998).

**¶23**        Section 41-785, A.R.S., provides that an employee's appeal of his or her dismissal "shall be filed not later than ten working days after the effective date of such action." This time limit is non-jurisdictional and the Board may waive non-compliance on a showing of good cause. *See Duron v. State ex rel. Dep't of Econ. Sec.*, 145 Ariz. 99, 100, 699 P.2d 1330, 1331 (App. 1985). If there is a factual dispute on the existence of an excuse, the Board may refer the matter for a hearing. *Id*. We cannot say the Board abused its discretion in determining Redlon showed good cause for her delay.

**¶24**        Redlon was not informed of her appeal rights at the time of her involuntary resignation; thus, she necessarily did not have notice of the time limit for filing such an appeal. And Redlon testified that after she resigned, she consistently sought information from ADES and other state agencies about her right to appeal. Her inquiries should have put ADES on notice that she considered her resignation involuntary and that she should be informed of her right to appeal.[9] *See generally Mueller v. U.S. Postal Service*, 76 F.3d 1198, 1201 (Fed. Cir. 1996) (agency has obligation to notify resigning employee of right to appeal once employee puts agency on notice he or she views resignation as involuntary).

---

[9]An ADES employee testified that ADES did not respond to her inquiries because "as far as we were concerned, the matter was closed."

16

Redlon further testified she did not learn of the Board's existence or her right to appeal until September 2004, when she met with an attorney. Although she did not file her appeal until five months after learning of her right to do so, she testified that neither the attorney nor the Board employees she had spoken with on the telephone had informed her of the procedure for filing an appeal. The record suggests that Redlon was never, in fact, instructed on how to file an appeal, as she simply wrote a letter to the Board asking "[w]ill you accept this as an appeal" after someone at the Board "gave [her] an address." ADES argues "[a]llowing Redlon to appeal over ten months after she resigned will certainly prejudice the Department," but it has failed to present evidence showing it would suffer any prejudice. Although reasonable minds could differ, it was within the Board's discretion whether to find Redlon had demonstrated good cause for her delay, *see Duron*, 145 Ariz. at 100, 699 P.2d at 1331, and there was evidence to support its determination.

**Disposition**

¶25        The order of the superior court is reversed and this matter is remanded with directions to refer it back to the Board for a hearing on the merits of Redlon's claim.


_____

                                                PHILIP G. ESPINOSA, Judge

CONCURRING:

_____
PETER J. ECKERSTROM, Presiding Judge

_____

17

J. WILLIAM BRAMMER, JR., Judge