NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

VERONICA M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.M.,
J.M., J.T., J.T., J.T., B.P., D.P., *Appellees*.

No. 1 CA-JV 14-0217
FILED 2-19-2015

———————————————

Appeal from the Superior Court in Maricopa County
No. JD 21627
The Honorable Linda H. Miles, Judge

**AFFIRMED**

———————————————

COUNSEL

The Owsley Law Firm, PLLC, Avondale
By Carlie Owsley Walker
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Randall M. Howe joined.

---

D O W N I E, Judge:

¶1        Veronica M. ("Mother") appeals the superior court's order terminating her parental rights to seven children (collectively, "the children").  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

¶2        With the exception of J.N.T., the children came into DCS care in March 2012 after D.P. was "born substance exposed and premature;" Mother used amphetamines during her pregnancy. Additionally, she lacked a stable home and was not meeting the children's basic needs. J.N.T. came into DCS care in June 2013.

¶3        In May 2012, the superior court found all children except J.N.T. dependent as to Mother.  In November 2013, the court found J.N.T. dependent.  At that time, the court noted Mother had failed to complete services DCS had offered, including substance abuse treatment, drug testing, a psychiatric evaluation, individual counseling, and parent aide services.

---

[1]        On appeal, "[w]e view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).  The statement of facts in Mother's opening brief fails to cite to the record.  *See* ARCAP 13(a)(5) (statement of facts shall include "appropriate references to the record").  When a litigant fails to include citations to the record, the court may disregard that party's unsupported factual narrative and draw the facts from the opposing party's properly-documented brief and/or the record on appeal. *See Ariz. Dep't of Econ. Sec. v. Redlon*, 215 Ariz. 13, 15, ¶ 2, 156 P.3d 430, 431 (App. 2007).

**¶4** In March 2013, DCS petitioned to terminate Mother's parental rights to J.M., J.M.T., J.S.T., B.P., and D.P. pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(3) (chronic drug abuse or mental illness), -533(B)(8)(a) (out-of-home placement for nine months or longer), and -533(B)(8)(b) (out-of-home for six months or longer). In October 2013, DCS amended its petition to include A.R.S. § 8-533(B)(8)(c) (out-of-home placement for fifteen months or longer). In February 2014, DCS amended its petition to include A.M. and J.N.T.

**¶5** After a contested severance trial, the superior court terminated Mother's parental rights under A.R.S. § 8-533(B)(3) (as to all children); -533(B)(8)(a) (as to all children); -533(B)(8)(b) (as to J.N.T., D.P., and B.P.); and -533(B)(8)(c) (as to all children except J.N.T.). The court also found severance was in the children's best interest.

**¶6** Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

**¶7** A court may terminate parental rights if it finds one of the statutory grounds for severance by clear and convincing evidence. A.R.S. §§ 8-533(B), -537(B). We review termination orders for an abuse of discretion. *Xavier R. v. Joseph R.*, 230 Ariz. 96, 100, ¶ 11, 280 P.3d 640, 644 (App. 2012).

**¶8** Mother contends insufficient evidence supports termination of her parental rights under A.R.S. § 8-533(B)(3) (history of chronic drug use or mental illness). Because we find sufficient evidence to support termination under A.R.S. § 8-533(B)(8)(a) (out-of-home placement for nine months or longer), we need not address the additional grounds for severance the superior court found. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3, 53 P.3d 203, 205 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

**¶9** To terminate parental rights under A.R.S. § 8-533(B)(8)(a), a child must be in an out-of-home placement for nine months or longer pursuant to court order and the parent must have substantially neglected or willfully refused to remedy the circumstances causing the child to be in an out-of-home placement. Mother does not dispute that the children were in an out-of-home placement pursuant to court order for nine months or longer.

¶10        DCS was required to establish by clear and convincing evidence that it "made a diligent effort to provide appropriate reunification services." *See* A.R.S. §§ 8-533(B)(8), -537(B); *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234-35, ¶¶ 12-15, 256 P.3d 628, 631-32 (App. 2011).  The record establishes that DCS offered Mother numerous services, including substance abuse treatment, drug testing, parent aide services, case aide services, psychological and psychiatric evaluations, individual counseling, bus passes, and cab service. DCS made multiple referrals for some services because Mother failed to complete them.  DCS advised Mother of the services she was required to complete.

¶11        A parent will not be found to have substantially neglected to remedy the circumstances causing an out-of-home placement if she makes an appreciable, good faith effort to comply with services, even if she cannot completely overcome her difficulties.  *Maricopa Cnty. Juvenile Action No. JS-501568*, 177 Ariz. 571, 576, 869 P.2d 1224, 1229 (App. 1994).  However, if a parent makes only "sporadic, aborted attempts to remedy" the circumstances, termination is appropriate.  *Id.*  Compliance requires more than *de minimis* effort.  *Id.* at 576 n.1, 869 P.2d at 1229 n.1.

¶12        The DCS case manager testified Mother's engagement in services, other than the psychological and psychiatric evaluations, was "minimal" prior to April 29, 2014. The record supports this assertion. Mother has a history of illegal drug use.  DCS referred her to TERROS Families First, which provides substance abuse treatment.  DCS made four referrals to TERROS, yet Mother did not participate until April 29, 2014 — more than two years after most of the children were removed from her care.  Although the TERROS counselor testified that, as of the time of trial, Mother was on track to complete the program in July 2014, she also stated Mother would require an additional six months of aftercare.

¶13        DCS also required Mother to drug test. Mother understood that, as of March 2012, she was required to call in daily and to test as directed.  DCS informed Mother that missed tests would be considered positive. Mother, however, did not begin to consistently comply with testing requirements until April 2014 — less than two months before the severance trial.  She missed over 100 tests.  When Mother did test, the results were negative for drug use; however, the case manager testified that sporadic testing may indicate a drug user who is testing only "when they can clean out their system."

¶14        Mother completed a psychological evaluation after two missed appointments. The evaluating psychologist offered a poor

parenting prognosis, but suggested giving Mother 60-90 additional days to engage in services. The DCS case manager testified that a year had passed since that evaluation, and during that time, Mother had not substantially participated in services.

¶15        Mother also completed a psychiatric evaluation with Dr. Rosengard, who found "symptoms consistent with depression, substance abuse, and . . . traits of a personality disorder," offering a poor prognosis for Mother's ability to parent the children. Even with the knowledge Mother had begun engaging in services as of April 2014, Dr. Rosengard testified his prognosis was "[l]ess than poor . . . because more time has gone by and there's only been a relatively brief period of time of proven sobriety and there has not been . . . engagement in therapy."

¶16        DCS also made referrals to three different counseling agencies.  However, Mother only participated in counseling at the outset of the first referral, and the agency later closed out that referral for non-compliance. Mother knew she was required to complete individual counseling, yet never did so.  Dr. Rosengard testified that, given the length of time that had elapsed, "it solidifies a very bad prognosis if [Mother's] not able/willing to go to therapy."

¶17        DCS also made three parent aide referrals.  The first two were closed out unsuccessfully. Mother canceled roughly half of her sessions with the parent aide. Although she used an aide for J.N.T., Mother canceled numerous visits and was required to make a confirming call before visits because of her inconsistent attendance. The parent aide testified Mother did not make J.N.T. a priority and often would not confirm her visits on time. When the parent aide referral for J.N.T. closed in April 2014, Mother's behavior objectives had not been met.

¶18        Mother also did not establish stable housing or employment. DCS had six or seven different addresses for her since January 2013. Mother did not consistently update DCS on address changes. DCS discussed housing with Mother several times and offered resource information, but Mother did not follow through.  Mother admitted at trial that she had been "unstable" and would not provide a number when asked how many places she had lived in the past year.  In terms of employment, Mother consistently told DCS she had worked for a temporary service for years.  However, she provided no verification, and at the time of trial, Mother testified she was unemployed.

**¶19**         Dr. Rosengard testified that individuals with personality disorders tend to engage in unhealthy relationships, causing instability. Mother confirmed that, before DCS became involved, she and S.P. — the father of some of her children — engaged in domestic violence that the children witnessed, and S.P. used methamphetamine in the home.  The case manager testified Mother and A.T. — the father of some of the other children — provided the same address as of January 2014, despite A.T.'s recent positive test for methamphetamine.

**¶20**         Mother testified her depression affected her ability to engage in services.  She did not, however, participate in services that could have addressed that condition.   Mother had two years to remedy her circumstances as to most of the children, and DCS offered appropriate services to assist her in doing so.  DCS is not required to "ensure that a parent participates in each service it offers" or to leave "the window of opportunity for remediation open indefinitely."  *Maricopa Cnty. Juvenile Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994); *JS-501568*, 177 Ariz. at 577, 869 P.2d at 1230 (engagement and recovery three years after child's out-of-home placement, though commendable, was "too little, too late").   The record supports the superior court's determination that Mother substantially neglected or willfully refused to remedy the circumstances causing the children's out-of-home placements.

## CONCLUSION[2]

**¶21**         We affirm the superior court's order terminating Mother's parental rights to all seven children.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[2]      Mother has not challenged the court's best interest finding, so we do not address it.  *See MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 304 n.7, ¶ 19, 197 P.3d 758, 765 n.7 (App. 2008) (arguments not developed on appeal are deemed waived).