NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KARA B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.B., *Appellees*.

No. 1 CA-JV 21-0001
FILED 6-15-2021

Appeal from the Superior Court in Maricopa County
No.  JD15968
JS20278
The Honorable Julie Ann Mata, Judge

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

---

**W I N T H R O P**, Judge:

**¶1** Kara B. ("Mother") appeals the juvenile court's order terminating her parental rights to A.B. (born September 7, 2018), arguing insufficient evidence supported the grounds for termination. For the following reasons, we affirm.

**FACTS[1] AND PROCEDURAL HISTORY**

**¶2** Mother has a long history of drug abuse and involvement with the Department of Child Safety ("DCS"). Mother herself was a dependent child and went through twenty-six different foster placements before she aged out of the system. She first used methamphetamine around the age of eleven, although she stated she did not use it regularly until around age twenty.

**¶3** In 2009, the court terminated Mother's parental rights to her first child on the substance-abuse ground pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3). Throughout that case, Mother consistently refused to participate in drug testing and insisted she was not abusing any substances, but then tested positive for methamphetamine. In 2015, two more of Mother's children were placed in DCS custody based on neglect and Mother's inability to parent due to substance abuse. During the pendency of that case, Mother again tested positive for methamphetamine. Mother consented to terminate her parental rights to those two children in August 2016.

**¶4** When A.B. was born, Mother tested positive for amphetamines at the hospital and admitted to using methamphetamine during the early months of her pregnancy. Accordingly, a nurse contacted DCS. A DCS case manager met Mother at the hospital, at which point Mother stated she wanted to sign over her parental rights to A.B. to a friend

---

[1] We review the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

visiting her in the hospital. DCS removed A.B. from Mother's care and filed a dependency petition alleging that Mother had neglected A.B. due to substance abuse and was unwilling or unable to parent A.B. based on her desire to sign over her parental rights to a friend.

¶5 A few days after DCS removed A.B. from Mother's care, Mother participated in a team decision-making meeting with DCS. At the start of the meeting, Mother produced printouts of guardianship paperwork and stated the meeting was unnecessary because she was willing to sign over permanent guardianship of A.B. to her friend. DCS ended the meeting prematurely after Mother exhibited "bizarre" and combative behaviors, including hitting the table, constantly interrupting others, name-calling, and calling the police but leaving before they arrived.

¶6 To reunite with A.B., DCS requested Mother demonstrate, among other things, her ability to maintain sobriety, control her impulses, and understand and articulate how her substance abuse issues impacted her ability to parent safely. DCS provided or referred Mother for services to help her overcome her substance abuse issues, including supervised visitation, parent-aide services, transportation, psychological services, and substance abuse testing and treatment.

¶7 Mother was unsuccessfully closed out of substance abuse treatment and parent-aide services on multiple occasions for non-participation. Mother self-referred to Focus Family, where she completed parenting, substance abuse, and domestic violence classes. However, Focus Family did not require Mother to complete any drug testing. Through the pendency of this case, Mother refused to participate in required substance abuse testing, even when explicitly ordered by the court.[2]

¶8 In November 2019, in a separate action, DCS filed a petition to terminate Mother's parental rights to A.B., alleging multiple grounds for severance. After a two-day combined dependency and severance hearing, the court entered an order finding A.B. dependent as to Mother and terminating Mother's parental rights to A.B. based on multiple grounds, including the substance-abuse ground pursuant to A.R.S. § 8-533(B)(3).

---

[2] Mother testified she was "clean and sober," but refused to drug test because she wanted to "stand up against the system" and assert her right to privacy and right against self-incrimination.

**¶9** Mother filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## ANALYSIS

### I. *Standard of Review*

**¶10** We review the juvenile court's order severing parental rights for an abuse of discretion, and we will not disturb the order unless no reasonable evidence supports its factual findings. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58, ¶ 9 (App. 2015); *Matthew L.*, 223 Ariz. at 549, ¶ 7. The court may sever parental rights if it finds clear and convincing evidence of one of the statutory grounds for severance and finds, by a preponderance of the evidence, that severance is in the child's best interests. *See* A.R.S. §§ 8-533(B), -537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281-82, 288, ¶¶ 7, 41 (2005).

**¶11** As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)). We do not reweigh evidence on appeal. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002).

### II. *Termination of Parental Rights Pursuant to A.R.S. § 8-533(B)(3)*

**¶12** Pursuant to A.R.S. § 8-533(B)(3), the court may terminate parental rights if "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."

**¶13** Mother argues the court abused its discretion in finding DCS proved by clear and convincing evidence the chronic substance-abuse ground for termination pursuant to A.R.S. § 8-533(B)(3). She does not dispute that she has a history of chronic substance abuse nor that there were reasonable grounds to believe that such substance abuse will continue. However, she contends there was insufficient evidence showing she was currently unable to discharge her parental responsibilities because of substance abuse, based on her strong bond with A.B., participation "in numerous services designed to help her attain and maintain sobriety," and appropriate parental behavior during visits with A.B. Mother argues the

court abused its discretion in concluding substance abuse precluded her from parenting without any "hard evidence" of her substance abuse.

¶14        Here, Mother demonstrated some appropriate parenting behaviors during visits with A.B. and participated in parenting and substance abuse classes with Focus Family to improve her ability to parent. But Mother has a long history of being unable to discharge her parental responsibilities due to substance abuse, which previously led to the termination of her parental rights to three other children. In connection with this action, Mother exhibited "bizarre" and combative behavior in at least one team decision-making meeting with DCS. A psychologist who evaluated Mother concluded her methamphetamine abuse could lead her to neglect and provide inadequate attention to a young and vulnerable child. The juvenile court also noted Mother has a history of impulsive behaviors, along with a lack of self-control, and concluded it was "not convinced [Mother] could meet the rigors of day-to-day parenting of a young child without assurances of attempts at sobriety."

¶15        Early in this case, DCS informed Mother she would need to maintain sobriety and demonstrate an ability to effectively parent to be reunited with A.B. Although Mother testified that she was not abusing substances, she has in previous dependency actions likewise insisted she was sober, similarly refused to participate in testing, and upon court order, subsequently tested positive for methamphetamine. In the present dependency/severance action, the court could reasonably infer Mother had continuing substance abuse issues based on her consistent refusal to submit to drug testing during the pendency of the case, even when ordered to do so by the court. *See Montoya v. Superior Court*, 173 Ariz. 129, 131 (App. 1992) (explaining the court could "draw a negative inference" when a father invoked the Fifth Amendment rather than answer questions about his past drug use in a custody proceeding); *see also State v. Harvill*, 106 Ariz. 386, 391 (1970) ("[T]he probative value of direct and circumstantial evidence [is] intrinsically similar; therefore, there is no logically sound reason for drawing a distinction as to the weight to be assigned each."). Mother could have rebutted that negative inference by complying with requested drug tests and demonstrating sobriety, but she was unwilling to do so. *See Montoya*, 173 Ariz. at 131. On this record, the juvenile court did not abuse

its discretion in concluding Mother could not discharge her parental responsibilities due to her history of chronic substance abuse.[3]

### III. Best Interests of the Child

**¶16** Mother does not challenge, and has therefore waived any argument regarding, the juvenile court's finding that termination of her parental rights was in the child's best interests. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017). Still, we note reasonable evidence supports that finding. *See generally Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) ("[B]est interests of the child are a necessary, but not exclusively sufficient, condition for an order of termination."). Here, the juvenile court acknowledged Mother's strong bond with A.B. but concluded A.B.'s need for permanence and stability in a substance-free household was paramount. *See Maricopa Cnty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988) ("In most cases, the presence of a statutory ground will have a negative effect on the child[.]"). A.B. has been out of Mother's care and lacked permanency for almost three years. During those years, Mother has failed to follow the court's directives to complete drug testing to address relevant safety concerns, and "a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016). At the time of the adjudication hearing, A.B. was in an adoptive placement that has provided "a loving and nurturing home environment," and A.B. has "thrived in their care." *See Oscar O.*, 209 Ariz. at 334, ¶ 6 (recognizing the availability of a current adoptive placement supports a finding that severance is in the child's best interests). Accordingly, reasonable evidence supports the juvenile court's conclusion that severing Mother's parental rights was in A.B.'s best interests.

### IV. Dependency Adjudication

**¶17** Mother also appeals the court's dependency finding, arguing it was supported by insufficient evidence. Here, DCS filed the petition to terminate Mother's parental rights to A.B. in a separate action (No. JS20278) from the dependency action (No. JD15968), and a dependency adjudication

---

[3] "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M.*, 203 Ariz. at 280, ¶ 3. Accordingly, we do not address Mother's arguments related to the time-in-care grounds for severance pursuant to A.R.S. § 8-533(B)(8).

is not a prerequisite to a termination petition or severance trial. *See generally* A.R.S. § 8-533(B). Moreover, permanent resolution of a case through termination of parental rights makes the appeal of the dependency finding moot. *See Sandblom v. Corbin*, 125 Ariz. 178, 182 (App. 1980) (explaining a case becomes moot when the relief sought would no longer have any practical effect on the parties); *Rita J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 512, 515 (App. 2000) ("[T]he findings made after a permanency hearing will be subsumed by a severance proceeding, should one follow, or by some other permanent resolution of the dependency action."). Thus, because we affirm the court's termination order, we need not address Mother's arguments regarding the sufficiency of the evidence supporting the dependency adjudication. And, even if this issue were not moot, the court's dependency finding was supported by ample evidence that Mother was unable to exercise proper parental care and control due to her chronic substance abuse. *See* A.R.S. § 8-201(15)(a).

## CONCLUSION

¶18         For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA