NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO M.B. and D.M.

No. 1 CA-JV 23-0214
FILED 05-14-2024

Appeal from the Superior Court in Maricopa County
No. JD39994, JS520515
The Honorable Pamela Gates, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Attorney at Law, Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer Blum
*Counsel for Appellee Arizona Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Daniel J. Kiley and Judge Kent E. Cattani joined.

---

**W I L L I A M S**, Judge:

¶1          Donna M. ("Mother") appeals the juvenile court's order finding her children dependent and terminating her parental rights. For reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          Dauntae B. ("Father") and Mother have two children, born in 2018 and 2019 respectively.[1]

¶3          In 2020, the Arizona Department of Child Safety ("DCS") petitioned for dependency based, in part, upon the parents' history of domestic violence in front of the children (Father as the perpetrator and Mother as the victim) and Father's drug abuse. The juvenile court found the children dependent.

¶4          Over the next two years, the children were placed either with maternal grandparents or left in Mother's care with a grandparent serving as a safety monitor. The back-and-forth in the children's placement was due, in large part, to continued bouts of domestic violence, Father's ongoing substance abuse, and, on one occasion, Mother taking the children to see Father without a safety monitor. Nevertheless, Mother actively participated in DCS offered services, including domestic violence counseling, parent-aide services, the family connections program, and substance-abuse testing.

¶5          In early 2022, the juvenile court ordered a psychological evaluation for Mother. But before DCS scheduled that evaluation, the children were returned to Mother's care after DCS concluded the children were no longer in imminent danger because: (1) Father had not engaged in domestic violence against Mother for several months, (2) the parents were no longer together, (3) Mother had demonstrated an ability to protect the children, including by contacting police when Father attempted to contact

---

[1] Father is not a party to this appeal.

her, and (4) Mother's successful participation in services. Within a few months, DCS moved to dismiss the dependency after the parties agreed to a parenting time schedule that precluded Father from contacting Mother, except in the case of an emergency related to the children, and then only by phone. The court dismissed the dependency in May 2022.

**¶6** Just two months later, Father showed up at Mother's apartment to see the children. While there, he overdosed. After emergency personnel treated Father, Mother informed him he was no longer allowed in the apartment. That night, Father returned, attempted to kick in the door, broke the door frame, and left before police arrived.

**¶7** Five months later, Mother was evicted from her apartment. She and the children slept in their vehicle until Mother was able to find a motel for them to stay in. Rather than contacting her own mother or other maternal relatives, Mother reached out to Father to take the children to Flagstaff over the holidays (where Father's extended family lived) while she considered other living arrangements. Before Father took the children to Flagstaff, police were called to the motel after reports of an argument. Though police found no evidence of physical violence, when questioned by police, one of the children stated, "Daddy beats up Mommy."

**¶8** Within a couple of days, Father took the children to Flagstaff. While there, police responded after Father put his mother in a headlock and threw a chair at her. She, in turn, fired a gun at Father in the children's presence. In the 911 call, which Father's mother made, she can be heard saying (seemingly to Father), "you can't keep doing this to them . . . you're not going to keep abusing my grandson."

**¶9** DCS took custody of the children, placed them with maternal grandmother, and petitioned for a new dependency. DCS also petitioned to terminate Mother's parental rights alleging neglect and recurrent removal grounds. *See* A.R.S. § 8-533(B)(2), (11).

**¶10** Following an adjudication hearing, the juvenile court found the children dependent. The court also terminated Mother's parental rights.

**¶11** Mother timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and the Arizona Rule of Procedure for the Juvenile Court 601(a).

**DISCUSSION**

**¶12**         Although fundamental, a parent's right to the care, custody, and control of her children is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). A court may terminate parental rights if it finds, by clear and convincing evidence, the existence of at least one of the statutory grounds enumerated in A.R.S. § 8-533(B), *id.* at 249, ¶ 12, and, by a preponderance of the evidence, that termination is in the children's best interests, *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review a termination order for an abuse of discretion and will affirm unless the juvenile court's findings of fact were clearly erroneous. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58, ¶ 9 (App. 2015).

**¶13**         The court found grounds for termination under A.R.S. § 8-533(B)(2) (neglect) and (B)(11) (recurrent removal). Mother has not challenged the court's neglect finding under A.R.S. § 8-533(B)(2), and so has waived that issue. *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017) (failing to challenge a statutory ground for termination of parental rights generally results in abandonment and waiver of that issue). The court's unchallenged finding of neglect alone is sufficient to affirm the court's finding of statutory grounds for termination. *See Raymond F. v. Ariz. Dep't of Econ. Sec.,* 224 Ariz. 373, 376, ¶ 14 (App. 2010) ("[W]e will affirm the termination if any one of the statutory grounds is proven.").

**¶14**         As to the recurrent removal grounds under A.R.S. § 8-533(B)(11), the juvenile court found that: (1) the children were cared for in an out-of-home placement, (2) DCS made diligent efforts to provide appropriate reunification services, (3) the children were returned to the legal custody of Mother, from whom they had been removed, and (4) the children were again removed within 18 months of being returned to Mother. Of these four elements, Mother only challenges the finding that DCS made diligent efforts to provide appropriate reunification services.

**¶15**         Mother takes issue with DCS's failure to provide her with a psychological evaluation that the juvenile court ordered in February 2022. But the dependency was dismissed within a few months of that order because of Mother's progress and the court's diminished concerns relating to the children's ongoing safety, *supra* ¶ 5. Because the court did not enforce that order, but instead dismissed the dependency, the court impliedly deemed the evaluation no longer necessary for the reunification of Mother and her children. And to the extent that Mother argues DCS was obligated to provide additional reunification services after the children were removed from Mother's care a second time following dismissal of the first

dependency, we disagree. It is true that the court was obligated to consider the availability of reunification services offered to Mother and her participation in the same. A.R.S. § 8-533(D). But the court did so, concluding that DCS made diligent efforts to provide appropriate reunification services. Specifically, the court noted DCS offered services related to domestic violence, substance abuse, and parenting, to name a few. On this record, reasonable evidence supports the court's finding. *In re Edgar V.*, 215 Ariz. 77, 78, ¶ 5 (App. 2007) ("We will not substitute our own judgment for that of the [juvenile] court, and will sustain the court's order if reasonable evidence in the record supports it.") (citations omitted).

**¶16** Mother also contends that termination of her parental rights was not in the children's best interests. Whether termination was in the children's best interests is a question of fact. *Jesus M. v. Ariz. Dep't of Econ. Sec.,* 203 Ariz. 278, 282, ¶ 13 (App. 2002). "We accept the juvenile court's findings of fact if reasonable evidence and inferences support them[.]" *Alma S. v. Dep't of Child Safety,* 245 Ariz. 146, 151, ¶ 18 (2018).

**¶17** Under the best interests inquiry, DCS must show that the children would either "benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274,* 167 Ariz. 1, 5 (1990) (emphasis in original). "Courts must consider the totality of the circumstances existing at the time of the severance determination." *Alma S.,* 245 Ariz. at 150–51, ¶ 13.

**¶18** Mother has a strong bond with the children. The DCS case manager, Mother's counselor, Mother's friend, and the children's grandmother all testified to that effect. But the existence of a bonded relationship, and its effect on a parent and her children, "although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. Dep't of Child Safety,* 240 Ariz. 96, 98, ¶ 12 (App. 2016).

**¶19** The court also considered evidence that the children were "traumatized by the acts of violence that they witnessed." The children would hide under tables when people knocked on the door and were afraid to sleep alone. They would often fight and bite each other. Despite the violence the children had been exposed to, Mother left them in Father's care (though admittedly she was in a difficult situation having been evicted from her apartment). Once in Father's care, the children again witnessed violence when visiting extended family in Flagstaff. The court's finding that the children would be harmed by continuing Mother's parental rights because she was unable to "adequately supervise[] and protect[]" them is supported by record evidence.

**¶20** Additionally, the juvenile court found that the children would benefit from termination of Mother's parental rights. The children are with their maternal grandmother, who wants to adopt them. The court found that they are "in a loving and nurturing home that is free from violence." Their needs are being met, and they are adoptable.

**¶21** Finally, though Mother also challenges the juvenile court's basis for finding a dependency, because we affirm the termination of her parental rights, her appeal of the dependency finding is moot. *See Sandblom v. Corbin,* 125 Ariz. 178, 182 (App. 1980) (finding a case becomes moot when the relief sought will have no practical effect on the parties); *Rita J. v. Ariz. Dep't of Econ. Sec.,* 196 Ariz. 512, 515, ¶ 9 (App. 2000) (a termination order renders a dependency finding moot); *see also* A.R.S. § 8-539 ("An order terminating the parent-child relationship shall divest the parent and the child of all legal rights, privileges, duties and obligations[.]").

**CONCLUSION**

**¶22** We affirm.



AMY M. WOOD • Clerk of the Court
FILED: TM